ROBINSON & CHURCH *v.* HURLBURT & MILLER.

*Payment. Promissory Note. Agreement.*

The plaintiffs had an account against the defendants, H. & M., as partners ; also an unsettled account against H. individually and another against the firm of H. & Bro. C, one of the plaintiffs, settled all these accounts by receiving H's individual promissory notes for their amount. At the time of the settlement, M., one of the defendants, objected to the settlement of H. & M's account in that way, saying that H. & M. preferred to pay their own debts; but C. replied that he preferred to do so, as he knew H., and was not afraid to trust him. On giving the note, H. charged the firm of H. & M. with the amount of their account included in the note, and the plaintiffs credited the note received, and balanced the accounts so settled. Some time afterwards M. requested the plaintiffs to send him a statement of their account against the then late firm of H. & M., which he received, consisting only of items which had accrued subsequently to the time the note of H. was given. The court, assuming that the case was to be governed by the laws of the State of New York, where the accounts were made, under which the fact of taking the note either of the debtor or of a third person for a pre-existing debt, does not discharge the debt without an express agreement to that effect between the parties, *held,* that the facts showed such an express agreement of the parties that the note was to be received by the plaintiffs in payment of the defendants' account, as rendered it operative as such payment even under the laws of that state.

The language "express agreement," in the cases upon this point, does not mean an agreement in any particular express terms or form of words, but is used to denote the result of a mutual understanding and meeting of the minds of the parties, in contra-distinction to an agreement implied by law.

BOOK ACCOUNT. The auditor reported the following facts : The plaintiffs exhibited an account marked "A" for one hundred thirty-seven dollars and ninety cents.

The defendants were partners from January, 1857, to the last of March of the same year, when their partnership was dissolved. The plaintiffs had an unsettled account with the firm of Hurlburt & Brother, of which Daniel Hurlburt, one of the defendants, was a member, and against Daniel Hurlburt alone ; and the account presented by the plaintiffs marked " A," though charged on the journal to Hurlburt & Miller, by whom the goods were ordered, had been improperly posted to the account of Daniel Hurlburt. On the 17th of March, 1857, C. H. Church, one of the plaintiffs came to Fairhaven, and settled all these accounts, except the four latest items, which constituted an account marked

"B," by receiving Daniel Hurlburt's note dated March 5th, 1857, for two hundred eighty dollars and nine cents, payable four months from date at the bank of Rutland, which note has not been paid. At the time of settling said accounts, Miller, one of the defendants, objected to the settlement of Hurlburt & Miller's account in that way, preferring it should be kept separate. Church insisted upon its being included in Daniel Hurlburt's note, for the reason that it stood upon the ledger to his account and he was acquainted with him. It appeared that Church knew before he came to Fairhaven that the account had been wrongly posted on the ledger, and that at the settlement the parties had the separate accounts before them. The plaintiffs credited the note received and balanced all the accounts so settled, and Daniel Hurlburt charged Hurlburt & Miller with the amount of their account included in the note. On the 11th of June, 1857, Miller, one of the defendants, requested the plaintiffs to send him a statement of their account against the then late firm of Hurlburt & Miller, and on the 13th day of the same month he received the account marked "B," amounting to forty-six dollars and nine cents, which was in the handwriting of the plaintiffs' book-keeper, and had accrued since the above settlement.

The auditor further reported that all the goods charged in the plaintiffs' account were sold and delivered by the plaintiffs to the defendants at Troy in the State of New York.

The case was tried in the county court on the foregoing report and carried to the supreme court, where, at the January term, 1860, it was remanded and recommitted to the auditor, who made an additional report that the account of forty-six dollars and nine cents marked "B," was not due at the time of the commencement of this suit; and further reported in addition to what he had before reported, respecting the giving of the note by Daniel Hurlburt to the plaintiffs for that portion of their account embraced in paper marked "A," that there was no special agreement between the plaintiffs or either of them, and Hurlburt or Hurlburt & Miller, that Hurlburt's note should be received or accepted in payment of that account, and that nothing was said on the subject between the parties, except that Church, one of the plaintiffs, when he was at Fairhaven, as stated in the

former report of the auditor, said in conversation with the defendants, that he had rather have that account included in the note; that Miller, one of the defendants, objected to it, saying Hurlburt & Miller preferred to pay their own debts. Church replied that he preferred to do so as he knew him (Hurlburt) and was not afraid to trust him. From the facts heretofore reported, as well as from the additional facts herein stated, the auditor did not find that the plaintiffs or that Church did expressly agree to accept the note in payment of the account; but if the court, upon the facts reported, as matter of law, should think otherwise, then he found that the note was accepted in payment of the account, and found in that event that there was nothing due from the defendants to the plaintiffs to balance book accounts.

The auditor further reported that the plaintiffs produced, on the trial before him the original note of Hurlburt, referred to in his former report, which he returned with his report to the court.

Upon the foregoing report the county Court, at the September term, 1860, PIERPOINT, J., presiding, rendered judgment for the plaintiffs to recover the amount of both bills named in the report; to which the defendants excepted.

*H. G. Wood* and *E. J. Phelps*, for the defendants.

*Linsley & Prout*, for the plaintiffs.

BARRETT, J. In view of the numerous decisions of the courts of the state of New York, the law of which has been often explicitly recognized and asserted by the supreme court of this state, we assume without discussion, that under the law of that state, the taking of a note either of the party or of a third person for or upon a pre-existing debt, does not *prima facie* discharge such debt; that in order for it to have that effect, it must appear affirmatively to have been so taken with an express agreement that it should be in payment, or discharge of such debt. The leading question, therefore, to be considered in this case is, whether the note of Hurlburt, one of the defendant partners, was taken by the plaintiffs in payment or satisfaction of their account

existing against the defendants at the time said note was taken, conformably to the law of the state of New York.

The auditor has reported all the facts constituting the transaction and its history, of the taking and holding of said note by the plaintiffs, and then says : " From the facts heretofore reported as well as from the additional facts herein stated, I do not find that said plaintiffs or said Church did expressly agree to accept said note in payment of said account ; but if the court upon the facts reported, as matter of law, shall think otherwise, then I find said note was accepted in payment of said accounts," &c. The auditor having thus reported, it is devolved on us to determine the legal effect of the report as made.    In the first place, therefore, what is the sense in which he says " I do not find that the plaintiffs or the said Church did *expressly agree* to accept said note in payment of said account." This expression is to be considered in connection with the special facts reported, and in so considering it the only conclusion that we are able to arrive at is, that the auditor means, that he does not find that it was agreed in express terms, that he *refers to the form rather than the substance* of what transpired between the parties.    This is strongly indicated by his saying, that he finds that nothing was said between the parties on the subject, that said note should be received or accepted in payment of said account, except what Church said when at Fairhaven, &c.

We think, therefore, while he means to certify to the court that he does not find in terms a formal agreement between the parties, that the note should be given and accepted in payment of the account, he does not intend to interfere with or conclude the question of whether there was in fact an agreement between the parties to that effect, evidenced by and consisting in the facts which he has specifically reported.

It is then to be enquired what the law of New York requires as to the character of the agreement necessary in order to render it effectual in making the taking of a note operative as a payment of a pre-existing debt.

Now we understand the matter to stand on this ground, as the basis principle, viz: that the mere fact of taking such note does not operate a payment of the pre-existing debt ; nor does

the law upon that fact predicate such a presumption—but the contrary; just as in this state, the law does not presume that it was taken as a security merely, but that it was taken as payment. If, therefore, an effect contrary to the legal presumption is claimed for a note thus taken, it is incumbent on the party making such claim, to show as matter of fact, that it was agreed between the parties that it should have such effect. When this is done we all understand that the requirement of the law is answered and the agreement is to control and determine the effect which the taking of the note is to have. The language used in some of the cases, " express agreement,"—is obviously used in distinction from an agreement which the law implies—an agreement as matter of fact—the result of the mutual understanding and meeting of minds of the parties,—without regard to the manner in which such a result has been attained, or the form in which it is announced, or the means by which it is to be proved. In New York the law implies upon the naked fact of taking a note upon a pre-existing debt, that it was agreed to be taken merely as security. In this state the law implies that it was agreed to be taken as payment. In many cases where a legal duty is cast upon a person to pay, the law implies an agreement to pay. As distinguished from such agreements, are all those that result from the concurrent meeting of the minds of the parties as matter of fact, by which they mutually understand that a specific arrangement has been made between them, of which their then and subsequent acts constitute the consummation and execution.

Does the report show an agreement in this sense of an express agreement, that said note of Hurlburt should be in payment and satisfaction of said account? Upon this point none of us have any doubt, that the facts reported constituted an actual consummated payment of the account by the note, in pursuance of the mutual understanding and intentions of the parties.

Church, one of the plaintiffs, settled their account with the defendants by receiving said note. Hurlburt charged the defendants, Hurlburt & Miller, with the amount of said account, on the giving of said note. This was on the 17th of March, 1857. On the 11th of June following, Miller, one of the defendants, request-

ed the plaintiffs to send him a statement of their account against the then late firm of Hurlburt & Miller, and on the 13th received their account, consisting only of items that had accrued subsequently to the time of receiving said note by the plaintiffs and settling their account with the defendant as before stated. On the occasion of making said settlement and taking said note, when Church said he had rather have said account included in said note, Miller objected to it, saying Hurlburt & Miller proposed to pay their own debts. Church replied, that he preferred to do so, as he knew Hurlburt and was not afraid to trust him. If these facts do not constitute an appropriation of the note in payment of the account, with the mutual understanding of all parties that such was the case, and with their mutual concurrence that it should be so, it is difficult to imagine a state of facts that would constitue such appropriation in payment. After all this had been done, to permit the plaintiffs to say that the taking of the note is not to operate as a payment of the account, would require us to hold that in contemplation of the law, an express agreement depends upon and can only be made by the use of a form of words—would require that, indeed, we should adopt the idea in which the auditor has obviously used the terms' " expressly agreed," in his report, that whether an express agreement or not, depended upon the form of words used, instead of the substance and meaning of what was said and done by the parties.

We think that no principle of law, or rule of construction or interpretation of language either of the cases cited or of the report itself, would justify us in so doing. On the other hand, the exposition we here make as to the sense in which the language of the cases as to *express agreement* is used, gives efficacy to established principles, and applies that language to this subject in its common legal signification,—and at the same time relieves the matter of the embarrassment in which that expression has seemed to involve the present case.

As we fully concur in this view of the case, we have thought best to consider and dispose of it upon the assumption that it is to be governed by the law as it is settled and administered in the state of New York, without any discussion of the question, which was very much debated a year ago by the members of the court,

whether, indeed, the transaction of taking the note was to be governed by the law of New York or Vermont. It is, perhaps, proper to say that some members of the court did not then take the view which is adopted in the written opinion of Judge Redfield, and as the case was left upon consultation did not understand that any decision of that question was agreed upon,—but supposed that the case was to be recommitted for a fact to be supplied as to the four last items of the account in question, with the controverted questions of law to stand for reconsideration upon the coming back of the case with the lacking facts supplied.

The result is, that as we hold the plaintiffs not entitled to recover for the part of the account covered by the note of Hurlburt, they cannot recover for the items that were not due when the suit was brought.

The judgment is therefore reversed, and judgment rendered in this court for the defendants to recover their costs.