A. M. GARRETT v. WESTERN UNION TELEGRAPH COM-
PANY, Appellant.

**Nondelivery of Telegram:** DAMAGES. A shipper had an arrange-
ment with a Chicago firm that if he received no answer to a telegram
asking for market prices in Chicago, such prices remained unchanged.
He sent such a message requesting answer at Kansas City. The
telegraph company knew that he bought for the Chicago market.
Through its fault, no answer was received. Plaintiff bought cattle
at Kansas City on the assumption that Chicago prices last given him
still ruled. *Held,* he can recover as damages the difference between
the price ruling when last advised and that ruling in Chicago when
he purchased at Kansas City.

**Duty of Sender.** Plaintiff was not bound to make independent
inquiries which would have told him the Chicago price had fallen.

**On Rehearing.** It is found that the court did not charge that plaintiff
was not bound to protect himself by independent inquiry, but submit-
ted it to the jury whether such duty rested upon him, in view of all
the circumstances of the case; and the rule stated in the second
division of this syllabus is withdrawn.

**Evidence.** Pleading an "agreement" admits testimony as to what
the "understanding" was.

*Appeal from Louisa District Court.*—HON. D. RYAN,
Judge.

FRIDAY, MAY 25, 1894.

ACTION against the defendant for damages result-
ing from a failure to transmit and deliver a telegraph
message. Jury trial. Verdict and judgment for plain-
tiff. Defendant appeals.—*Affirmed.*

*C. A. Carpenter, Arthur Springer,* and *Cummins &
Wright* for appellant.

*L. A. Reiley* for appellee.

KINNE, J.—I. It appears from the record that
plaintiff is a resident of Louisa county, Iowa; that, for

many years prior to the happenings of the matters complained of, he had been engaged in the business of buying, selling, and shipping cattle, and in shipping them to, and selling them in, the Chicago market; that he bought and shipped on the line of the Chicago, Rock Island & Pacific Railroad at points between Muscatine, Iowa, and Kansas City, Missouri, and including said cities. On the evening of June 28, 1888, he left his home in the country, went to Columbus Junction, a station on said railway, and there delivered to the defendant's operator, to be transmitted, the following message:

"COLUMBUS JUNCTION, IOWA, June 28, 1888.
"*To Gregory, Cooley & Co., U. S. Yards, Chicago:*

"Send me market Kansas City to-morrow and next day.                       A. M. GARRETT."

He paid fifty cents to the operator for the transmission of the message. He then took the train, arriving in Kansas City about 9 o'clock the next morning, and went to the stock yards to buy cattle. He visited the telegraph office in the stock exchange building, and left his name, and told them where he might be found. He visited this office several times during the day, and prior to 2 o'clock P. M., and made inquiry for a reply to his message that he had sent the night before. Not having received any reply to his message, he, at 2 o'clock P. M., purchased one hundred and forty-two head of cattle. When he made this purchase, the price of such cattle in Chicago was fifty cents a hundred less than on the twenty-seventh day of June, 1888. Plaintiff had shipped cattle to, and sold them through, said Gregory, Cooley & Company for several years, and had an arrangement with said firm by which they were to keep him advised by telegraph of the Chicago cattle market. The arrangement was, that, if plaintiff asked said firm for the state of the

market by telegraph, and there was no change since the last report, then no response was to be made by said firm to said inquiry, and plaintiff acted upon the last report. If there was a change in the market, then said firm answered the telegram, indicating what the change was. In pursuance of this arrangement, plaintiff, on June 27, 1888, obtained from said firm the market price of cattle in Chicago on that day, and it appears that the purchase he made of cattle in Kansas City on the day following was made in reliance on said last report, and that, if his message had been sent, delivered, and answered, he would not have made the purchase. The evidence, we think, shows that the message was never sent from Columbus Junction by the defendant's operators,—that no attempt was made to send it,—and it appears without conflict that it was never delivered to Gregory, Cooley & Company. It appears, also, that the Chicago market for cattle was posted on the bulletin boards of the stock exchange in Kansas City, and that, if plaintiff had consulted these reports, he could have ascertained, before he made his purchase, that the Chicago market had declined. It, also, appeared that, had plaintiff's message been received by Gregory, Cooley & Company, they would have answered it at once, and advised plaintiff of the decline in the market. This is the second appeal in this case. See 49 N. W. Rep. 88, 83 Iowa, 257.

II. Several questions considered on the former appeal are not involved in the present one. On the trial, plaintiff was asked: "Now, had you any understanding with them [Gregory, Cooley & Company]? Or you may state whether or not you had any understanding with them in reference to their answering your messages when sent, and, if so, you may state what it was." The question was objected to as incompetent, irrelevant, and immaterial.

Similar questions were asked other witnesses, to which like objections were made, and in each case they were overruled, and an exception taken. It is very clear that a witness must state the facts, not his conclusions, and if the question may properly be said to call for conclusions, and not for the facts, it was improper. We think, however, that the word "understanding" was used in the sense of calling for facts as to the agreement between the parties, if any. If the witness had been asked to state what "agreement" existed, if any, between him and the firm as to the matter inquired about, it would hardly be claimed that it called for a conclusion, and not for the facts. The word "understanding" is often used as synonymous for "agreement," and such appears to have been the sense in which it was used in this instance. The answer disclosed just what the agreement was. The questions were not objectionable.

III. It is contended that the rule as to the measure of damages, given to the jury, was erroneous. It read: "If you find the plaintiff entitled to recover, then the measurement of his damages will be the difference between the market value of such cattle as he purchased on the twenty-seventh day of June, 1888, when he received his last report, and what they were on the twenty-ninth day of the month at the Union Stock Yards, Chicago, Illinois, with interest at six per cent from June 29, 1888, to the present time." It is claimed that the market value at Kansas City should control, rather than that of Chicago; that the instruction ignores the fact as to what plaintiff paid for the cattle, and whether he lost by the venture; and that the difference between what plaintiff paid for the cattle and the market price is the measure of his recovery. It must not be forgotten that these cattle were being bought in Kansas City for the Chicago market; that the damages recoverable in such a case

are such as the parties must necessarily have contemplated as a natural result of a failure to deliver the message. It was said in the opinion on the former appeal: "The message involved in the case did not apprise the defendant's agent at Columbus Junction, by its terms, that the plaintiff was on his way to Kansas City to purchase cattle, and that he would rely on the answer to the message in making his purchases; but it did, in effect, advise the agent that he was on his way to Kansas City, and that he desired market reports to be sent to him at that place." It appears that plaintiff sent and received many messages at the Columbus Junction office relating to the Chicago markets. Now, it seems to us, in view of all the facts, that the court properly instructed the jury touching this matter. We think from the telegrams sent, and the knowledge defendant is shown to have had of plaintiff's business, it may be said that defendant ought to be held to know that the information asked for in the message might be acted upon by plaintiff in purchasing cattle for the Chicago market. Under the circumstances, there is no force in the suggestion that the instruction ignores the fact as to what plaintiff paid for the cattle, and whether he lost by the venture. It is true that, if plaintiff could have sold the cattle in Kansas City, after hearing of the decline in Chicago prices, at what he had paid for them, he would have sustained no loss; but it appears from the evidence that on the next day (the thirtieth) he purchased the same kind of cattle at a still lower price, and we may well presume that the cattle he had purchased on the twenty-ninth, if sold in Kansas City on the thirtieth, would have brought less than he had paid for them. Complaint is made because the court, in framing the instructions, ignored evidence of the defendant that the plaintiff in fact purchased the cattle on the thirtieth day of June instead of the twenty-ninth. Even if this was error, it was clearly

without prejudice, as the evidence, without conflict, shows that the price of cattle was the same in Chicago on the thirtieth as on the twenty-ninth day of June. What we have said also applies to the objection raised to the admission of testimony relating to the market price of cattle at Chicago.

IV.    The fourth instruction was to the effect that the plaintiff was not bound to resort to other sources of information to ascertain the Chicago cattle market. Why should plaintiff be required to resort to newspapers or the Kansas City bulletin in the stock exchange to obtain the Chicago prices? By virtue of his agreement with his commission men in Chicago, he knew, if his telegram was transmitted and delivered to them, that, if he received no reply, there had been no change in prices since his last report. He had a right to act upon this agreement, and, while he might have consulted other sources of information, yet, under the circumstances, he was not bound to do so.

V.    Other objections are made to the instructions given and to the refusal to give instructions asked by defendant, and to the receiving of evidence. We discover no prejudicial error.    AFFIRMED.

SATURDAY, OCTOBER 27, 1894.

*On rehearing.—Affirmed.*

KINNE, J.—We need not consider on this application for a rehearing all the points urged by counsel. It is proper to say that we have given all of them full consideration, and after a re-examination of the case we discover no reason for disturbing our judgment. We must, however, withdraw what is said in the fourth division of the preceding opinion, as we find from a further examination of the record that the fact therein stated touching the instruction of the court is incorrect,

and in view of the holding on the former appeal the rule of law applied in said fourth division of the opinion is inaccurate. The record shows that, taking into consideration the whole of the instruction complained of, it fully complied with the former opinion of this court. The question as to whether the plaintiff was bound to resort to information other than that which he might obtain from his commission men, to ascertain the market value of cattle in Chicago, before he purchased the cattle in Kansas City, was in fact fully and fairly submitted to the jury. Appellant's contention is based upon the first part of the instruction, which is qualified by what followed. When construed together, as it must be, it is in line with the opinion on the former appeal. The petition for a rehearing is overruled, and the judgment is AFFIRMED.