TRAVELERS INSURANCE COMPANY *v.* E. G. EVANS.

January Term, 1928.

Present: WATSON, C. J., POWERS, SLACK, MOULTON, and CHASE, JJ.

Opinion filed October 3, 1928.

252

*Max L. Powell* for the defendant.

*Warren R. Austin* and *William H. Edmunds* for the plaintiff.

WATSON, C. J. This is a common law action of negligence brought by the Travelers Insurance Company under section 5775 of the General Laws, to recover of defendant E. G. Evans, for negligence which caused the death of one William Rogers. That section of the statute is part of chapter 241 which relates to "Employer's Liability and Workmen's Compensation." The particular section mentioned relates to "Liability of Third Persons," and reads: "When an injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in some person other than the employer a legal liability to pay damages in respect thereto, the injured employee may, at his option, either claim compensation under the provisions of this chapter or obtain damages from or proceed at law against such other person to recover damages; and, if compensation is claimed and awarded under the provisions of this chapter, an employer having paid the compensation or having become liable therefor shall be subrogated to the rights of the injured employee to recover against that person; provided, if the employer recovers from such other person damages in excess of the compensation already paid or awarded to be paid under the provisions of this chapter, then any such excess shall be paid to the injured employee less the employer's expenses and costs of action."

By section 5758 certain words and phrases used in that chapter, unless the context otherwise requires, shall be construed as follows:

"I. 'Employer' to include any body of persons, corporate or unincorporated, public or private, and the legal representative of a deceased employer, and to include the owner or lessee of premises, or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor or for any other reason, is not the direct employer of the workmen there employed. If the employer is insured, 'employer' includes his insurer so far as applicable;

"II. 'Workman' and 'employee' to mean a person who has entered into the employment of, or works under contract of service or apprenticeship with, an employer, but not to include a person whose employment is purely

casual or not for the purpose of the employer's trade or business, \* \* \* \* \* \* \* ;

\* \* \* \* \* \*

"V. 'Employment,' in the case of private employers, to include employment only in a trade or occupation which is carried on by the employer for the sake of pecuniary gain \* \* \* \* \* \* ;

\* \* \* \* \* \*

"VIII. 'Insurance carrier' to include any corporation from which an employer has obtained workmen's compensation insurance or guaranty insurance in accordance with the provisions of this chapter.''

Sec. 5768 (as amended by Laws of 1923, No. 105, § 2) provides:

"\* \* \* \* \* A charitable, religious, educational or other corporation, \* \* \* \* \* or individual engaged in a business, trade or occupation which is not carried on for the sake of pecuniary gain, may voluntarily come within the provisions of this chapter by giving a similar notice'' to said commissioner that he wishes to be included within such provisions.

By section 5774: "The rights and remedies granted by the provisions of this chapter to the employee on account of a personal injury for which he is entitled to compensation under the provisions of this chapter, shall exclude all other rights and remedies of such employee, his personal representatives, dependents or next of kin, at common law or otherwise on account of such injury \* \* \* \* \*'' The trial was by court. The following facts, among others, appear of record: The defendant was engaged in building for himself a private dwelling in the city of Burlington and he himself had to do with directing the work to a certain extent, and employed one Tomlinson to look after the erection of the house and one Salls to have charge of slating it. Salls' business was that of taking jobs of slating houses, and said William Rogers was an employee of his in the prosecution of such business. Salls was insured in the plaintiff company under the provisions of Chapter 241, General Laws, and

defendant Evans was insured in the Employers Liability Company under the provisions of same chapter. The findings state ''that there was an understanding between the defendant and Salls that the staging erected by Evans (defendant) and those in charge under him should be left for the use of Salls and his employees in slating the house.'' Said Rogers met with an accident July 28, 1922, arising out of and in the course of such employment, and while upon a staging erected by defendant or his employees. The staging fell, throwing Rogers to the ground with the planking, some slate, and other material, a distance of approximately twenty-seven to thirty feet, injuring him so that he died shortly afterwards. That staging had been erected the day before the accident for the use of the carpenters and was then used by them while engaged in putting up the cornice to the house over the window to which said staging was attached as stated below. Rogers had been on the staging only a short time before the accident, and only about a dozen or fifteen slate had been placed on the staging before it fell, no one else being on it at the time.

The staging was erected in the manner following: By tacking across the window on the inside a board one inch in thickness and about six inches wide. On the top of this board were placed two ledger boards extending out away from the building and supported at their outer ends by uprights of planking laid at right angles to the ledger boards on which deceased was standing at the time of the accident. One of these ledger boards gave way and by reason thereof he was thrown to the ground as stated above.

The findings state that the evidence was somewhat conflicting as to the part of the staging which did in fact give way, some of it tending to show that the cross board on which the ledger boards rested broke, and some, that one of the ledger boards was insufficiently fastened to the window casing and pulled out; that either the board was insufficient and defective for the purpose for which it was used, or the ledger board improperly nailed to the casing by the employees of the defendant. Thereon it was expressly found, however, that while one of the ledger boards was securely nailed to the window casing, *the other ledger board which fell when the staging fell was not securely nailed to the casing, and that this was the proximate cause of the accident.*

The deceased was fifty-four years of age at the time of the accident. He left surviving him a widow, but no children. Subsequent to his decease, under an agreement between the plaintiff and the representatives of the deceased, approved by the commissioner of industries under the provisions of Chapter 241 of General Laws, the plaintiff was obligated to pay to said widow the sum of $9.79 per week for two hundred and sixty weeks. At the time of the hearing of this case, the plaintiff had paid to said widow for a period of one hundred and sixty-nine weeks, leaving unpaid at that time the period of ninety-one weeks. Plaintiff also paid one hundred dollars as funeral expenses of the deceased, ten dollars for medical services rendered him, growing out of said accident, and two dollars and thirty cents for similar purpose paid the Mary Fletcher Hospital.

The court awarded as compensation in this case the sum of five thousand dollars.

Defendant excepted to the court's failure to find according to his second request: "That the defendant Evans had nothing whatever to do with the building of the stagings. They were built by the carpenters as needed for the carrying on of the work under the direction of Tomlinson who made the plans and who had the matter in charge of his foreman." Defendant also excepted to the finding that the staging was "erected by the defendant or his employees." The ground of these exceptions, says the bill of exceptions, was that there was no evidence that defendant personally had anything to do with the erection of the staging; and because the evidence was undisputed that it was erected by the carpenters under the direction of the defendant's foreman.

The bill of exceptions refers to the transcript, makes it a part thereof and to control; and in support of this exception defendant's brief calls our attention to some of the evidence.

This requested finding is not completely borne out by the testimony of the defendant himself. He was asked by his counsel, concerning the erection of the staging: "Q. What, if any talk did you have with Mr. Salls about his using that staging for the slaters? A. Not any in regard to the staging—in regard to that particular staging—he was to use the staging that had been put up by my carpenters for their own use and if there were any changes needed the carpenters might help make

the changes, but his men also helped. Q. And this staging was constructed by your agents for an entirely different use than it was put to by Mr. Salls? A. Yes, sir, it was. In cross-examination defendant testified that his men built the staging; that his boss carpenter was Fred Tomlinson of Jericho; that Tomlinson was not in charge of putting up the staging, the carpenters had charge of that themselves; that Tomlinson had two other jobs at the time; that he was on them and left defendant in charge. Q. So you were in charge of the men putting up the staging? A. I was supposed to be at the head of the work. Each of these two exceptions is without merit.

Furthermore, the staging in question was one of the stagings put up by the defendant or his employees in erecting the house, concerning which stagings defendant and Salls entered into an "understanding," as stated above, that they (stagings) should be left for the use of Salls and his employees in doing the slating work. The word "understanding" is defined by Webster (New International Dict.) as "anything mutually understood or agreed upon." In *Barkow* v. *Sanger*, 47 Wis. 500, 3 N. W. 16, this definition by Webster is discussed and judicial expressions by the same court in other cases noted, showing that that word, as used, is synonymous with "agreement." Therein the case of *Tyler* v. *Burrington*, 39 Wis. 376, is referred to, in which the court used the expression "circumstances tending to show that they ripened into a *mutual understanding—an express contract.*"

As giving the two words *synonymous* meaning, see *Sykes* v. *City Savings Bank*, 115 Mich. 321, 73 N. W. 369, 69 A. S. R. 562; *Garrett* v. *Western Union Tel. Co.*, 92 Iowa, 449, 58 N. W. 1064; *Griffin* v. *Isbell*, 17 Ala. 184. As used in the findings before us, we are satisfied from the context that the word "understanding" is synonymous with "agreement," and we so treat it in the further consideration of the case. See *Robinson & Church* v. *Hurlburt & Miller*, 34 Vt. 115.

Defendant excepted to the failure to find in accordance with his seventh request: "That all of the workmen, carpenters, and slaters, were in a common enterprise, namely, the building of a dwelling house." The exception was put upon the ground that it was material to be determined that the decedent was a fellow servant of the carpenters engaged in a common enter-

prise, defendant claiming that such was the effect of the undisputed evidence and all the evidence.

In his brief defendant says "the whole transcript shows that this was a common enterprise" and he was entitled to an affirmative finding to that effect. But such a reference to the transcript is not a compliance with the rule requiring specific reference to such parts of the evidence as may be deemed material, giving the page and the number of the interrogatory, etc., and the exception is not considered. *Vermont Box Co.* v. *Hanks,* 92 Vt. 92, 102 Atl. 91. For a like reason the exception to the failure to find according to defendant's eighth request is not considered.

It remains to consider the exceptions to the judgment, so far as briefed. Fifteen such exceptions were saved, and Nos. 13, 14, and 15 are particularly relied upon by defendant and briefed.

"No. 13. Where, as in this case, all are engaged in a common enterprise. and all have come under the Compensation Act, the decedent could recover only under the Act and having so recovered of the plaintiff the decedent had no cause of action against this defendant and no rights to which the plaintiff was subrogated." This exception is based on the assumed facts, not found, that all, including decedent, were engaged in a common enterprise, and that all, including the defendant, had come under the Workmen's Compensation Act. Passing for the present, at least, the first assumption, there is no finding of the second assumption. Defendant was a private person engaged in building for himself a private dwelling. There is no finding that he had come under the Workmen's Compensation Act, and from the facts found we cannot infer it to have been so, even though "he himself had to do with the directing of the work to a certain extent," and even though he "was insured in the Employers Liability Company under the provisions of said chapter." *O'Boyle* v. *Parker-Young Co.,* 95 Vt. 58, 112 Atl. 385. The building of that house for the purpose named was not employment in a trade or occupation carried on by defendant "for the sake of pecuniary gain," for which reason he was not engaged in any "employment" included within the Workmen's Compensation Act as defined in section 5758, subdivision V. *Packett* v. *Moretown Creamery Co.,* 91 Vt. 97, 99 Atl. 638, L. R. A. 1918F, 173. Nor is there any finding that

defendant had taken the steps required by amended section 5768, to bring himself within the provisions of said Act as an individual engaged in a business, trade or occupation, not carried on for pecuniary gain. There is grave doubt as to the mere building of said house being properly classed as the business, trade or occupation of defendant; but assuming that it might be, the record does not show the necessary notice from him to the commissioner, of his election to come within the Act under the provisions of this section.

It not appearing of record that at the time of the accident in question defendant had met the requirements essential to his coming within the provisions of said Act, exception 13 to the judgment is without merit.

"No. 14. This is a common law action of negligence and the decedent, having elected to come under the Compensation Act and accepted its benefits, thereby waived any further action against his employer, Evans." This exception is predicated upon the assumption that decedent's employer was the defendant, whereas it will presently be seen that his employer was Salls. This exception is not sustained.

"No. 15. In the circumstances disclosed by the findings the recovery from Salls in decedent's right was a satisfaction of and bar to all claims for damages by decedent's representative."

The questions presented by this exception involve the status of Salls upon the facts found expressly or by necessary implication from those so found. The contention of defendant is, that Salls was his servant, while that of plaintiff is, that Salls was an independent contractor.

The findings show that notwithstanding defendant employed Tomlinson to superintend the erection of the house, he contracted with Salls to have charge of the particular work of slating it, the latter's business being that of taking jobs of slating houses, having employees of his own, including the deceased, in such work; the "understanding" (already fully stated) between defendant and Salls regarding the staging; and acted upon by both, the staging in question being one within that "understanding." The legal effect of such "understanding" was that defendant agreed to furnish the stagings put up by him in the erection of the house, as completed structures or instrumentalities for the use of Salls and his employees in their

particular piece of work. In such circumstances, it was not the duty of the slaters, as part of their undertaking, to erect the staging required for their work; but the law made it the duty of defendant to use due diligence to see that the structure so furnished was reasonably safe for the purpose of its intended use, and his liability in the instant case is the same whether the defective staging was put up by him personally, or by his servants doing carpenters' work on the same building. 18 R. C. L. § 98, pp. 596, 597; *Miller* v. *Dunton*, 98 Vt. 113, 126 Atl. 492.

The above facts show that Salls was employed to do the particular work of slating the house, supplying his own tools, assistants, and instrumentalities except the completed stagings to be furnished by defendant pursuant to his aforementioned agreement. The defendant had no right to interfere with the details of that work as it progressed, nor with the employees engaged in performing it. Their employer was Salls, and from him only could they take directions as to how and when to do such work. The right to supervise, control, and direct it was in him alone. Defendant could specify the result only, and Salls could adopt such means and methods as he saw fit to accomplish that result. We therefore hold that upon the findings Salls was an independent contractor. *Kelley's Dependents* v. *Hoosac Lumber Co.*, 95 Vt. 50, 113 Atl. 818.

The status of Salls being that of an independent contractor, and defendant, as before seen, being a private person not within the influence of the Workmen's Compensation Act, and so not entitled to its benefits, the standing of the latter as to the deceased at the time of his fatal injury was that of a "person other than the employer," within the meaning of section 5775 under which this action was brought. Consequently the receipt of compensation by the widow of the deceased from the plaintiff as insurer of Salls, his employer, is no bar to this action under that section of the statute against such third person. By the provisions thereof an employer who has paid the compensation or has become liable therefor is subrogated to the rights of the injured employee to recover against that person. *Davis* v. *Central Vermont Ry. Co.*, 95 Vt. 180, 113 Atl. 539. In such circumstances, the statute (section 5758, subd. I) is applicable, wherein it provides that if the employer is insured, "employer" includes his insurer.

Defendant's 5th exception to the judgment is as follows: "If the defect (in staging) was patent and decedent was an employee of defendant his failure to inspect was contributory negligence and will bar recovery." Defendant seems to rely upon this exception in his brief. No other exception touches the question of contributory negligence, and it is enough to say concerning the unsoundness of this one that there is no finding and no holding that decedent was an employee of defendant. Each is to the contrary.

This disposes of all the exceptions of record, particularly relied upon and briefed by the exceptant, none of which are sustained.

*Judgment affirmed.*