FREDERICK L. HOUGHTON ET AL. *v.* JESSE R. GRIMES ET AL.

May Term, 1930.

Present: POWERS, C. J., SLACK, MOULTON, and THOMPSON, JJ., and GRAHAM, Supr. J.

Opinion filed October 7, 1930.

56

*Wm. R. Daley* for the plaintiffs.

*Herbert G. Barber* and *A. V. D. Piper* for the defendants.

MOULTON, J. This is an appeal by the plaintiffs from a decree assessing damages sustained by the defendant by reason of an injunction. The hearing was before the chancellor, who filed a finding of facts, from which the following appears:

The defendant Dr. Jesse R. Grimes, brought an action at law against the Central New Hampshire Power Company of Maine, a corporation, returnable in the county court of Windham County. At the same time he obtained an injunction in a suit in equity, by which the Central New Hampshire Power Company was restrained from selling, transferring, or disposing of 6,690 shares of the common stock of the Central Light & Power Company, of the par value of $669,000, then owned by it, the certificate of which was not within the State of Vermont. Before any further steps had been taken in either of these proceedings, the plaintiffs in the instant case, all of them members of an unincorporated association named Frederick L. Houghton

and Associates (hereinafter called the Houghton Associates), of which the defendant Grimes was also a member, obtained an injunction against him, restraining him from proceeding with his action at law against the Central New Hampshire Power Company, on the basis of an alleged agreement between the members of the Association (which owned or controlled all of the capital stock of that corporation) that the money invested therein should not be withdrawn at the maturity of the certificates of indebtedness. The injunction was later enlarged to cover two other proceedings which had been brought by Dr. Grimes upon the same cause of action, one in New Hampshire, the other in Massachusetts. After a hearing the injunction was dissolved and the bill dismissed. The decree was subsequently affirmed by this Court (100 Vt. 99, 135 Atl. 15).

The defendant Grimes then took judgment against the Central New Hampshire Power Company for the sum of $22,667.60. An execution was issued and returned *nulla bona,* and thereafter application made for an assessment of the damages occasioned both defendants by the injunction.

The defendant A. V. D. Piper was counsel for Dr. Grimes in the latter's action against the Central New Hampshire Power Company. As to him the injunction forbade the prosecution of the action as attorney, and the disclosure or use of information previously obtained by him while connected, either as officer or attorney, with the Central New Hampshire Power Company or the Central Light & Power Company.

When the injunction was obtained in the present case the value of the 6,690 shares of stock in the Central Light & Power Company was more than sufficient to cover the amount of the judgment finally obtained by Dr. Grimes. It did not appear that, at that time, the Central New Hampshire Power Company owned any other property. If Dr. Grimes had not been enjoined, he could have satisfied his judgment by proper proceedings against the stock certificate wherever found. The certificate representing the stock has not been in Vermont at any time since the institution of the action at law against the Central New Hampshire Power Company.

After the injunction was granted in this case the Central New Hampshire Power Company, and the Houghton Associates, each acting through Frederick L. Houghton, as agent, entered into an ''escrow and option agreement,'' whereby they agreed

to sell, among numerous other items owned or controlled by the Houghton Associates, the 6,690 shares of stock of the Central Light & Power Company to John H. Blodgett of Boston, Massachusetts, and Frederick D. Nims of Seattle, Washington, the various securities to be placed, pending the consummation of the agreement, with the New England Trust Company of Boston, as depositary. The action of Frederick L. Houghton as agent with reference to this agreement was ratified by vote of the stockholders of the Central New Hampshire Power Company, and by that of a majority of the members of the Houghton Associates. The terms of the agreement are recited in the findings of facts but it is not necessary to repeat them here. The chancellor found that the 6,690 shares of stock passed under the agreement to the control of the buyers or their assigns, and the ownership thereof was divested from the Central New Hampshire Power Company, although the terms of the agreement had not then been fully performed.

After the affirmance of the decree dissolving the injunction and before Dr. Grimes obtained his judgment, 6,690 shares of stock of the Central Light & Power Company were returned to the treasurer of the Central New Hampshire Power Company, at Boston. No evidence was offered to show the value of the stock at this time. The chancellor states that he is unable to find that the Central New Hampshire Power Company has had property of value which could be reached to satisfy the judgment since it was obtained, and finds that Dr. Grimes has been damaged by the injunction to the amount of his judgment.

In these proceedings Mr. Piper did not appear as counsel for his co-defendant, but did appear, file an answer, and take part as counsel for himself. His services as such were fairly worth $215, and his damages are assessed at that amount.

As evidence tending to prove the value of the 6,690 shares of common stock of the Central Light & Power Company, owned by the Central New Hampshire Power Company, at the time of the injunction, and the sale and transfer thereof under the escrow and option agreement, the defendants offered a certified transcript of part of the testimony of Frederick L. Houghton, who had since deceased, given at a previous hearing in this case. As to the value, he testified, in effect, that in his opinion the stock was then worth very much more than anything that might be due Dr. Grimes upon the latter's certificates of indebted-

ness of the Central New Hampshire Power Company; and as to the transfer, that the stock certificates were, at the time he was testifying, in the possession of the depositary, the New England Trust Company, under the terms of the agreement, and were under the control of Messrs. Blodgett and Nims, although the agreement had not been fully carried out.

This evidence was received subject to exception. The method of reproducing the testimony of a deceased witness, if relevant, by a certified copy of the transcript is authorized by G. L. 1628. In *Lynch's Admr.* v. *Murray*, 86 Vt. 1, 13, 83 Atl. 746, 751, it is said that the rule as to the substantial identity of parties and issues is well stated by Professor Wigmore in his treatise on Evidence, pars. 1386, 1387 (1st ed.), as follows: "It is sufficient if the issue was the same, or substantially so, with reference to the likelihood of adequate cross-examination, because the opponent has thus already had the full benefit of the security intended by the law. * * * * * * It is enough to suggest that the situation is one that calls for common sense in the application of the rule and not a narrow and pedantic illiberality. On the whole the judicial rulings show a liberal inclination to receive testimony already adequately tested."

It appears that this testimony was given in the course of a hearing upon the defendant's motion for an increased injunction bond, based upon the claim that the stock had been transferred and was no longer in the possession of the Central New Hampshire Power Company. The value of the stock, and whether or not it had in reality been so transferred, were material matters for consideration upon the questions whether the bond should be increased, and, if so, to what amount. The parties were the same. The issues in each instance were the value of the stock and the fact of its transfer. The requirements of the rule were thus complied with, and there was no error in overruling the objection upon this ground.

A further ground for the exception was that it did not appear upon what the witness based his testimony as to the value, whether upon actual knowledge or otherwise; and that nothing appeared as to the debts or obligations of the company. This objection goes to the competency of the witness, and to the weight rather than to the admissibility of his testimony. *Maughn* v. *Estate of Burns*, 64 Vt. 316, 321, 23 Atl. 583. Value is at best largely a matter of opinion, and from the necessities

62

of the case much liberality is indulged in the admission of opinion evidence. Any person who knows the property and has an opinion of its value may give that opinion in evidence for what it is worth. *Brown* v. *Aitken*, 90 Vt. 569, 574, 99 Atl. 265. It is enough if the witness is shown to have some peculiar means of forming an intelligent judgment as to the value, beyond what is possessed by men in general. *Raithel* v. *Hall*, 97 Vt. 469, 472, 124 Atl. 586. The rule is applied with equal liberality, whether the property is real or personal. Wigmore, Evidence (2nd ed.), par. 716. The competency of the witness is, of course, a preliminary question for the court to decide before receiving the testimony, and if supported by evidence of qualification the ruling in favor of competency is not to be disturbed. *Hefflon* v. *Cashman*, 92 Vt. 323, 326, 103 Atl. 1023. The contrary not appearing, we assume, since the testimony was received, that the witness was found to be competent. *Jewell* v. *H. T. & W. R. R. Co.*, 85 Vt. 64, 67, 81 Atl. 238. There was no error in this finding. The witness was a member and one of the directors of the unincorporated association which bore his name, and which controlled the Central New Hampshire Power Company and the Central Light & Power Company. He had acted as agent for the Houghton Associates and for the Central New Hampshire Power Company in entering into the escrow and option agreement with Messrs. Blodgett and Nims. His situation and means of information were such as to justify the chancellor in finding him competent to express an opinion upon the value of the stock.

Defendant's Exhibit A, which was received subject to exception, was the record of a special meeting of the stockholders of the Central New Hampshire Power Company at which it was voted to ratify and confirm the action of Frederick L. Houghton, who, having acted under written authority from a majority of the stockholders, had entered into the escrow agreement on behalf of the company. The record of the vote recited the agreement in full. The exhibit was offered as tending to show the value and the transfer of the stock. It was evidence of the act of the corporation in taking steps to part with the stock in question, and was admissible as such. Wigmore, Evidence, par. 1661 (2nd ed.). Its weight as evidence of the value of the stock is problematical. True, the consideration for the transfer appeared in the agreement, and price has some

tendency to prove value. *Donovan* v. *Towle,* 99 Vt. 464, 468, 134 Atl. 588; *Miller* v. *Belville,* 98 Vt. 243, 250, 126 Atl. 590; *Belka* v. *Allen,* 82 Vt. 456, 461, 74 Atl. 91. But the weight of such evidence depends upon circumstances. *Slayton* v. *Drown,* 93 Vt. 290, 294, 107 Atl. 307. The stock appeared only as one item in a list of securities and choses in action, and no attempt was apparently made thereafter to separate its value from that of the aggregate. However, it was at most harmless error to admit it for this purpose. We cannot assume that the chancellor made any improper use of it, or considered it upon any issue as to which it was not admissible. *Raithel* v. *Hall,* 99 Vt. 65, 74, 130 Atl. 749; *Lynch's Admr.* v. *Murray, supra; Young* v. *Ebersohl,* 328 Ill. 273, 159 N. E. 235, 237.

 Defendant's Exhibit B, was the record of a meeting of the Houghton Associates at which, all the plaintiffs being present, it was voted to extend the authority of Frederick L. Houghton to act on behalf of the associates in connection with the escrow agreement until the completion thereof. It was offered as bearing upon the admissibility of the transcript of Houghton's testimony and also as bearing upon the admissibility of Exhibit A, and was received subject to exception on the ground that it was immaterial and irrelevant. We have already considered the admissibility of the transcript and Exhibit A. The offered evidence had a tendency to show the connection of Houghton with the transfer. Its bearing upon the admissibility of Exhibit A is rather obscure, but if its admission for this purpose was error it was too colorless to be harmful.

 The plaintiffs excepted to the finding that defendant Piper did not appear in any hearing as counsel for his co-defendant Grimes, but appeared, filed an answer and acted as counsel for himself; and that his services as such were fairly worth $215, at which sum his damages were assessed. It is claimed that this finding is wholly unsupported by the evidence. No question is made as to the propriety of the allowance of necessary counsel fees as damages, if occasioned by the injunction. *Weed* v. *Hunt,* 90 Vt. 418, 420, 98 Atl. 922; *Barre Water Co.* v. *Carnes,* 68 Vt. 23, 26, 33 Atl. 898; *Lillie* v. *Lillie,* 55 Vt. 470, 474.

Mr. Piper testified that he attended the hearing when the injunction was granted, and spent some time in preparing a brief covering the law on the subject; that he later appeared to

64

move the dissolution of the injunction and afterwards filed his answer and attended for four days the hearing on the merits as counsel for himself. During this time he also assisted counsel for Dr. Grimes, but without charge. We think that there was evidence supporting the finding. Although, as the plaintiffs urge, the injunction as to Mr. Piper may have restrained him from divulging certain information which it was his professional duty not to disclose, he had the right to appear and defend himself from the imputation that he was about to do so.

■ The finding that the 6,690 shares of stock in the Central Light & Power Company were, at the time of granting the injunction, more than sufficient in value to cover the amount of the judgment was supported by the testimony of Frederick L. Houghton, the admissibility of which we have already considered.

■ Exception was taken to the finding that "it did not appear that the Central New Hampshire Power Company owned any other property (than the 6,690 shares above mentioned) at that time (*i.e.*, the date of the injunction)." This is claimed to be without supporting evidence. But in the bill of complaint in this case, signed and sworn to by all the plaintiffs, it is alleged that the Central Light & Power Company purchased and took over the physical properties of the Central New Hampshire Power Company and issued its common stock in payment. This is a judicial admission and dispensed with the necessity of introducing evidence to prove the fact alleged. *Oakes et al.* v. *Buckman,* 87 Vt. 187, 190, 88 Atl. 736; *Holbrook* v. *Quinlan & Company,* 84 Vt. 411, 428, 80 Atl. 339; 2 Wigmore, Evidence (2nd ed.), par. 1064. No prejudice resulted from the finding.

The finding that if Dr. Grimes had not been enjoined he would have been able to satisfy his judgment by proper proceedings against the stock certificate wherever found, was warranted by the evidence as to the value of the stock and its ownership at the time of the injunction. And the evidence was also sufficient to support the finding that Houghton entered into the escrow agreement as agent for the Houghton Associates and the Central New Hampshire Power Company.

An exception was taken to the finding that at the time that Doctor Grimes commenced his action at law against the Central New Hampshire Power Company, the Houghton Associates

owned and controlled the Central New Hampshire Power Company, the Central Light & Power Company and their subsidiaries. The ground was that there was no competent evidence upon which the finding could be predicated. But the bill of complaint alleged that the Central New Hampshire Power Company was organized, financed and controlled by the Houghton Associates and that the entire capital stock of the company was held by a trustee for the association and subject to its orders; and, further, that by reason of its ownership of the stock of the Central Light & Power Company, the Central New Hampshire Power Company controlled that corporation. Here, again, was a judicial admission of the fact.

 A group of exceptions, both to the findings and to the refusal to find as requested with regard to the escrow agreement and what had been done in pursuance to it may be considered together. It appeared in evidence and was found that the 6,690 shares of stock were returned to the possession of the treasurer of the Central New Hampshire Power Company after the final decree in this case and before Dr. Grimes obtained his judgment. And, as we shall see, there was no evidence that whatever may have been done under the agreement had any effect upon the value of the stock. All the findings regarding it and the proceedings under it were therefore immaterial. If the exceptions were sustained the error would be harmless. *Platt, Admx.* v. *Shields et al.,* 96 Vt. 257, 268, 119 Atl. 520. We do not consider exceptions to immaterial findings. *McClary* v. *Hubbard,* 97 Vt. 222, 240, 122 Atl. 469.

Indeed, the same may be said of the exceptions to the admission of evidence tending to show the transfer under the escrow agreement. But we have thought it expedient to consider these exceptions because of the necessity for a new trial which will shortly appear.

An exception was also taken to the statement of the chancellor that he was unable to find, upon the evidence, that the Central New Hampshire Power Company had property of value which could be reached to satisfy Doctor Grimes' judgment since he obtained it. The ground for the exception was that there was no supporting evidence.

 The finding is negative in form, but the parties treat it as meaning that the company had no such property, and so do we. The defendant Grimes was entitled to an assess-

66

ment of such damages as necessarily resulted to him from the injunction. *Center* v. *Hoag,* 52 Vt. 401, 403. The burden was upon him to establish his damages by proper evidence. *Spaulding & Kimball Co.* v. *Ætna Chemical Co.,* 98 Vt. 169, 175, 126 Atl. 588. In order to make such damages to appear, he would have to prove that his judgment, which would have been collectible in whole or in part if the injunction had not been issued, had become collectible in a less degree or wholly uncollectible by reason of the restraint imposed upon him. If the judgment were still collectible in part after the dissolution of the injunction it would be his duty to make reasonable use of the means at hand to protect himself against loss. *Stull* v. *Beddeo,* 78 Neb. 119, 112 N. W. 315, 14 L. R. A. (N. S.) 507, 512.

The findings state that "there was no evidence offered to show value in the 6,690 shares of stock in the Central Light & Power Company after December 4, 1926, when turned over to Denison Cowles, Treasurer of the Central New Hampshire Power Company, after having passed theretofore to the buyers or their assigns for the purpose, as disclosed by the escrow agreement, of the buyers consolidating the properties purchased by them under the escrow agreement and issuing necessary securities to finance such purchase and consolidation; nor was any evidence offered to show that the Central Light & Power Company had transferred to the Central New Hampshire Power Company" certain properties mentioned in the escrow agreeement. It follows that since there was no evidence upon the subject, and the burden was, as we have seen, on the defendant to show a diminution or absence of value, the finding that there was none was erroneous. The stock at one time delivered to the depositary under the escrow agreement was again in the possession of the Central New Hampshire Power Company. Whatever may have been done in the process of consolidation, if carried out, as provided by the agreement, nothing offered in evidence tended to show a change in value from what it had been before. No evidence of its value at any other time than that of the issuance of the injunction was offered.

Nor does the fact that an execution was issued and returned *nulla bona* aid the defendant. It appears from the findings that at all times, even when the suit at law was first instituted, the certificates of stock were outside the State of Vermont. There was no claim by either party that there was any

property within the State. When the stock was returned to the Central New Hampshire Power Company, it was in Massachusetts. All this was known at all material times to the defendant. The return of *nulla bona* on the execution was not evidence of the non-existence of property situated beyond the jurisdiction of the court. If there had been no injunction, and judgment had been taken at the earliest possible moment, Dr. Grimes would have been compelled to go to Massachusetts, or wherever else the stock was situated, and there proceed against it in some appropriate manner.

 The finding that the defendant Grimes was damaged to the amount of his uncollected judgment can be justified only if the previous finding, that there was no property of value from which it could be realized, is sustained. Since the latter finding is without supporting evidence, the finding of damage falls with it.

 The plaintiffs complain of the decree because it orders the payment of the entire amount of the judgment, which is in excess of the penalty of the injunction bonds. This is not a proceeding to enforce the liability of the sureties on the bonds which must be accomplished by an action at law. *Sturgis* v. *Knapp*, 33 Vt. 486, 522. It is an assessment of the damages caused by the injunction, as between the parties to the suit, which the court of chancery has the inherent power to make, notwithstanding the provision of G. L. 1539, relating to an assessment by reference to a master. *Spaulding & Kimball Co.* v. *Ætna Chemical Co.*, 98 Vt. 169, 172, 173, 126 Atl. 588, and cases cited.

It was held in *Sturgis* v. *Knapp, supra*, pp. 524-526 (although not without a weighty dissent by Pierpont and Poland, JJ.), that an assessment of injunction damage must not exceed the amount of the bond, and this doctrine was followed in *Glover* v. *McGaffey*, 56 Vt. 294, 296, but with the qualification that: "If an order had been made that the injunction should issue or continue upon condition that the orators pay all the damages sustained by the defendant, the case might merit a different conclusion." In the instant case, the injunction was ordered to issue provided a bond should be filed "conditioned as required by the rules of chancery" and the order for the additional bond must be construed to be to the same effect. Chancery rule 40 provides that an injunction

bond shall be "conditioned to pay the party enjoined such damages as he may sustain by reason of the injunction if the Court shall eventually decide that the plaintiff was not equitably entitled thereto." So there is ground for saying that we have here an injunction order which in effect comes within the proviso in *Glover* v. *McGaffey,* above quoted. However, all doubt is removed by the terms of G. L. 1539, originally enacted as No. 142, Acts 1884, which became a law during the year following the decision in *Glover* v. *McGaffey.* This statute provides that "when an injunction in chancery is dissolved by final decree in favor of the defendant, he shall be entitled to recover his actual damages caused by the wrongful issuing of the injunction." Thus it is seen that the assessment of injunction damages between the parties is no longer limited in amount by the penalty of the bond.

*Powell, Trustee* v. *Woodbury,* 85 Vt. 504, 513, 83 Atl. 541, Ann. Cas. 1914D, 606, cited by the plaintiffs, is not to the contrary. It is said therein that no action lies at common law for damages caused by an injunction, unless it was sued out maliciously and without probable cause, and, because injunction bonds were devised to remedy this defect, there are two remedies, one on the bond and the other for malicious use of the process without probable cause. But the language of the opinion makes it clear that the Court was speaking only of proceedings other than those incident to the injunction suit itself, and consequently it has no application to the situation before us.

Exceptions were taken by the plaintiffs to the refusal of the chancellor to find in accordance with several requests duly presented by them. Many of these exceptions are adequately covered by what we have already said in this opinion and do not require separate treatment. A few only need be noticed.

 The twelfth request was to find that the Central New Hampshire Power Company had property and rights in New Hampshire and Massachusetts, but that it did not appear that Dr. Grimes attempted to collect his judgment in either of those states. As to the latter part of this request, the fact sufficiently appears by the findings as made. As to the rest of it, nothing is said in the plaintiffs' brief beyond the statement that they were entitled to a compliance with the request. The evidence upon which the requested finding is based is not

pointed out. The exception is inadequately briefed. We do not search the record for grounds upon which to predicate error. *Bean* v. *Colton,* 99 Vt. 45, 47, 130 Atl. 580; *Sormani* v. *Christianson,* 100 Vt. 185, 187, 135 Atl. 769; *Hopkins* v. *Sargent's Estate,* 88 Vt. 217, 222, 92 Atl. 14. See, also, *Traveler's Ins. Co.* v. *Evans,* 101 Vt. 250, 258, 143 Atl. 290; *Dailey* v. *Town of Ludlow,* 102 Vt. 312, 316, 147 Atl. 771, 773.

 The twentieth request was for a finding that at the time of the institution of the equity proceedings by Dr. Grimes against the Central New Hampshire Power Company, by which the transfer or encumbering of the stock was enjoined, the company was insolvent and had not sufficient assets to pay its debts, including the certificates of indebtedness in question. The evidence cited in support of this request is a paragraph in Dr. Grimes' amended bill of complaint in that suit, in which he states that he is informed and believes and therefore states the fact to be thus. The pleading which contains this allegation was not one filed in the case on trial, and whatever appeared therein was not conclusive as a judicial admission in favor of the present plaintiffs. Wigmore, Evidence (2nd ed.), par. 1066 (5). It was, however, competent evidence against Doctor Grimes as an admission of the truth of the fact alleged. *Elliot* v. *Hayden,* 104 Mass. 180, 183; *Bliss* v. *Nichols,* 12 Allen (Mass.) 443, 445; Wigmore, Evidence (2nd ed.), par. 1066. The circumstance that it was made on information and belief did not affect the question of its admissibility but detracted from its weight. *Pope* v. *Allen,* 115 U. S. 363, 370, 29 L. ed. 393, 397, 6 Sup. Ct. 69. This was for the chancellor to determine in deciding whether the evidence was sufficient to persuade him of the existence of the fact as embodied in the request. We must presume that he gave due consideration to every circumstance appearing in the case before him. Evidently he took the allegation *cum grano salis.* We are unable to say that error affirmatively appears in the refusal to comply with the request

 Since, as we have seen, a material finding has been made without evidence to support it, the decree, so far as the defendant Grimes is concerned, must be reversed. In such a situation ordinarily we would not remand the case, but would enter in this Court such a decree as ought to have been made below. *Hinsman* v. *Marble Savings Bank,* 102 Vt. 217, 223, 147 Atl. 270, 272. But, on the record of this case, we think

that justice requires a new trial upon the issue of damages sustained by Dr. Grimes by reason of the injunction.

*As to defendant Piper, the decree is affirmed. As to defendant Grimes the decree is reversed and the cause remanded.*

NOTE.—When this case was first argued, at the November Term, 1929, it was assigned to MR. JUSTICE WILLCOX. At the May Term, 1930, it was ordered for reargument and assigned to MR. JUSTICE MOULTON.