FRANK C. SPARKS COMPANY, a Delaware corporation, Appellant, v. HUBER BAKING COMPANY, a Delaware corporation, WEST T. LAMBORN, ROBERT W. LAMBORN and McCORMICK CONSTRUCTION CO., INC., a Delaware corporation, Appellees.

(*April* 28, 1953)

WOLCOTT and TUNNELL, Justices, and CAREY, J., sitting.

*Stewart Lynch* for the appellant.

*William Prickett* for Huber Baking Company; *Thomas J. Healy, Jr.,* for West T. Lamborn and Robert W. Lamborn; *William Poole* (of Berl, Potter and Anderson) and *Howard L. Williams* (of Hering, Morris, James and Hitchens) for McCormick Construction Co., Inc., appellees.

Supreme Court of the State of Delaware, No. 30, 1952.

WOLCOTT, J., delivering the opinion of the Court:

The principal question for decision is whether an employer, or the employer's insurance carrier which has paid compensation under the Workmen's Compensation Law is subrogated to the rights of an injured employee who has elected to take compensation under the Workmen's Compensation Law, 19 *Del. C.* § 2101 *et seq.*

The facts are briefly as follows:

In the fall of 1948, Frank C. Sparks Company (hereafter referred to as "Sparks") contracted with Huber Baking Company (hereafter referred to as "Huber") to construct a cement second floor in a proposed addition to Huber's premises.

At about the same time, Huber contracted with West T. Lamborn and Robert W. Lamborn (hereafter referred to as "the

Lamborns") for the preparation of plans and furnishing of structural steel, and contracted with McCormick Construction Co., Inc. (hereafter referred to as "McCormick") for the erection of the structural steel.

All the parties with whom Huber contracted proceeded with the fulfillment of their respective contracts. While the employees of Sparks were engaged in laying the cement second floor of the addition, the center steel beam furnished by the Lamborns and erected by McCormick collapsed, injuring five of Sparks' employees.

Liberty Mutual Insurance Company (hereafter referred to as "Liberty"), not a named party to this action, was the workmen's compensation insurance carrier of Sparks. Liberty was also the public liability insurance carrier of Huber.

After the injuries, the employees of Sparks elected, under 1935 *Code*, § 6108,[1] to take workmen's compensation benefits. As a result of that election, Liberty paid compensation benefits in the amount of $1,029.00 and medical expenses in the amount of $2,294.60. In addition, Sparks paid as wages to its injured employees the sum of $3,258.00 and additional medical expenses in the amount of $223.75.

Liberty claiming to be subrogated to the rights of the injured employees with respect to their cause of action for personal injuries against third parties other than their employer, brought suit in the names of the injured employees against the Lamborns and McCormick. Liberty did not join Huber, for which it was public liability insurer, as a party defendant.

Thereafter, Sparks in its own name instituted the cause now before us, also claiming to be subrogated to the rights of its injured employees. Sparks named as defendants Huber, the Lam-

---

[1]References to the statutory law will be made in terms of the *Code of* 1935 since it was in effect at the time this cause arose. This code section has, by act of the current General Assembly, been recodified as 19 *Del. C.* § 2363.

borns and McCormick. In its complaint Sparks sets out various particulars of negligence—several, joint and concurrent—alleged to have been committed by each of the defendants severally and in concert. The complaint sets forth two separate causes of action.

The first cause of action seeks to recover from the defendants the amounts paid by Sparks as wages and for medical expenses. The second cause of action seeks to recover on behalf of its injured employees damages for the personal injuries suffered as a result of the alleged negligence of the defendants.

Counsel stipulated that the question of whether Sparks or Liberty was subrogated under 1935 *Code*, § 6108, to the employees' rights of action for personal injuries should be decided first by the trial court. After argument, it was held, 84 *A*. 2d 413, that Liberty, as the compensating insurance carrier, was subrogated to the right of the injured employees to sue for their personal injuries and, therefore, alone was entitled to bring suit. Judgment was entered in the second cause of action in favor of the defendants. From this judgment, Sparks has appealed.

The defendants then moved for summary judgment in Sparks' first cause of action on the ground that the payments made by Sparks to and for its injured employees were made voluntarily and without any legal liability to its employees. Without opinion, the court entered summary judgment in favor of the defendants. From this judgment, Sparks has appealed.

We will first take up the appeal of Sparks from the summary judgment for the defendants entered in the first cause of action. In this cause of action, Sparks seeks to recover as damages the payments made by Sparks as wages during incapacity and for medical expenses. It appears that a dispute arose between Liberty and Sparks as to the amount of medical benefits that Liberty was required to pay for the injured employees of Sparks. Liberty took the position that under 1935 *Code*, § 6078,[2]

---

[2]Re-codified as 19 *Del. C.* § 2322.

it was required to pay only "reasonable" medical expenses amounting to ward hospital care, while Sparks took the position that an implied condition of its contracts with its injured employees required the payment of greater medical expenses. Sparks did not submit pursuant to 1935 *Code*, § 6078 the dispute over medical payments to the Industrial Accident Board for settlement, nor did it obtain approval pursuant to 1935 *Code*, § 6100[3] for the wage payments made by it.

■ Presumably, therefore, the amounts paid as benefits by Liberty were the benefits required to be paid by the Workmen's Compensation Law and, accordingly, if Sparks is entitled to maintain its first cause of action, it must be upon some theory other than that its payments were required by the Workmen's Compensation Law.

Sparks argues that impliedly incorporated in every work contract it has with its employees is its custom to pay for the highest type of medical care and to pay the wages of its employees during incapacity caused by injuries received in the course of their employment. It argues that an employer required by contract to pay such amounts may recover them as damages from a person tortiously injuring the employee and thus directly causing the employer's liability. Sparks, in reality, is seeking indemnity for sums of money it allegedly paid by reason of contracts with its employees. We think that this must be Sparks' theory of its first cause of action because of its reliance upon *Jones v. Waterman S. S. Corp.*, 3 *Cir.*, 155 *F.* 2d 992.

We think it doubtful that *Jones v. Waterman S. S. Corp., supra*, relied upon by Sparks, was correctly decided if it held that the right of indemnification under such circumstances was a common-law right. *Cf. The Federal No. 2*, 2 *Cir.*, 21 *F.* 2d 313, and *Crab Orchard Imp. Co. v. Chesapeake & Ohio Railway Co.*, 4 *Cir.*, 115 *F.* 2d 277.

---

[3]Re-codified as 19 *Del. C.* § 2377.

However, we do not have to decide the question. The defendants, in support of their motion for summary judgment, took the deposition of an officer of Sparks. This evidence permits only the conclusion that the payments made by Sparks for the benefit of its employees were gratuities, and were not made because of any contractual obligation. The evidence adduced by the defendants refutes the allegation in the complaint that Sparks was required to pay the amounts it now seeks to recover. In such a situation, a duty is cast upon the plaintiff to disclose evidence which will demonstrate the existence of a genuine issue of fact for submission to the jury, if summary judgment for the defendants is to be denied. *Murphy v. T. B. O'Toole, Inc.*, 8 *Terry* 99, 87 *A.* 2d 637. The mere assertion in the complaint to the contrary will not suffice to show a plausible ground for the claim asserted. The plaintiff elected not to controvert the evidence offered in support of the motion for summary judgment. It must, therefore, be taken as true. Of necessity, in this state of the record, summary judgment properly was entered for the defendants because there was no basis in fact for the first cause of action. 3 *Barron and Holtzoff*, § 1235, p. 85; *Gifford v. Travelers Protective Ass'n*, 9 *Cir.*, 153 *F.* 2d 209; *Engl v. Aetna Life Insurance Co.*, 2 *Cir.*, 139 *F.* 2d 469; *Seward v. Nissen, D. C.*, 2 *F. R. D.* 545.

We turn now to Sparks' second cause of action. In this cause of action, Sparks seeks to maintain by right of subrogation under the Workmen's Compensation Law an action for personal injuries to its employees. Two section of that law, 1935 *Code*, §§ 6108, 6112,[4] are pertinent. These two sections are as follows:

"6108. Sec. 38. Injury, Liability Of Third Person For; Employer May Elect; Subrogation Of Employer:—Whenever an injury for which compensation is payable under this chapter shall have been sustained under circumstances creating in some other person than the employer, a legal liability to pay damages in respect thereto, the injured employee may, at his option,

---

[4]Re-codified as 19 *Del. C.* §§ 2363, 2301.

either claim compensation under this chapter or obtain damages from, or proceed at law against such other person to recover damages, but he shall not proceed against both; and if compensation is awarded under this chapter, the employer having paid the compensation or having become liable therefor, shall be subrogated to the rights of the injured employee, or of his dependents to recover damages against such third person, and may recover in his own name or that of the injured employee from the other person in whom legal liability for damages exists, the indemnity paid or payable to the injured employee. Any recovery against such third person in excess of the compensation theretofore paid and thereafter payable by the employer (less the cost of securing and collecting same) shall be paid forthwith when collected, to the employee or the dependents."

"6112. Sec. 42. Employers, Who Are:—The following shall constitute employers subject to the provisions of this chapter: The State of Delaware, the County of New Castle, every corporation (private, public, municipal or public quasi), every association, every firm and every person (excepting the employers mentioned in Section 48 and Section 49 hereof) having in his, her, or its service any employee defined in Section 43 of this chapter. If the employer is insured, it shall include his, her or its insurer as far as practicable."

. Sparks contends that under § 6108, it, as the employer of the injured persons who elected to take workmen's compensation benefits, is the only party who can assert a claim for the personal injuries suffered by its employees. It argues that § 6108, in giving subrogation to an "employer" precludes a claim of subrogation by the insurer who has actually paid the compensation benefits.

Sparks urges that its construction of § 6108 is the only construction fair to the employee and must, therefore, have been intended by the Legislature. Basically, the argument seems to narrow itself to a contention that the Legislature intended to

limit subrogation to the actual employer in all instances, on the theory that the employer is the natural protector of the employee's right to receive such sum as might be recovered in excess of the total of compensation benefits paid.

As we view the question, it is one of statutory construction and is to be answered by determining whether or not the definition of "employer" found in § 6112 is applicable to the subrogation provision in § 6108.

In *Silvia v. Scotten*, 2 *W. W. Harr.* 295, 122 *A.* 513, 515 the Supreme Court construed the provision allowing subrogation to the rights of an employee. In that case, a widow brought suit against a third party for damages for wrongful death. Prior to the institution of suit she had received compensation benefits under the Workmen's Compensation Law. The precise question before the court was whether the widow, or the employer of the deceased, had the right to maintain such an action. It was held that § 6108 required a person owning a cause of action for personal injuries or death against someone other than the employer to elect whether to pursue that remedy or to apply for compensation benefits under the Workmen's Compensation Law, and if the election was the latter, that thereafter the person so electing was prohibited from asserting the former. The cause of action by reason of such election became assigned by operation of law to the employer who had paid, or who had become liable to pay, the compensation benefits. The subrogated employer thereafter could prosecute, settle or elect to let lapse the claim thus assigned, subject always to the right of the employee in the event of recovery to receive from the employer such excess above the total of compensation benefits paid as might be recovered. However, the injured person's rights in his cause of action are terminated upon his election to take workmen's compensation benefits. This is made abundantly clear by the following language in the court's opinion:

"* * * 'the employer by succession—*ipso facto et eo instanti* —becomes the owner of the right against the wrongdoer.' He

may assert it or not as he sees fit. If perchance the claim for damages against the third person is far in excess of the amount of compensation allowed under the Compensation Act, the employee, or his dependents to whom such excess belongs in the event that the employer collects it, have no way of collecting it except as the interest or grace of the employer may prompt him to act. In this respect they are at his mercy. The risk that he will not act to collect full damages from the person liable is a hazard they take in electing to proceed under the Compensation Act. This may not be fair and just to the employee and his dependents. Indeed it would appear to us not to be. But it is the result which the language of the act clearly indicates as the legislative intent, and we have no choice but to observe it."

It seems clear, therefore, from *Silvia v. Scotten* that the primary purpose of the subrogation provisions of § 6108 is to give a compensating employer a means of recouping his loss. The safeguarding of the employee's hope of further recovery is of secondary interest. The philosophy of the Workmen's Compensation Law is to give an injured employee, irrespective of the merits of his cause of action, a prompt and sure means of receiving compensation and medical care without subjecting himself to the hazards and delays of a law suit. The employee retains no legal rights because of the provision allowing him to receive from the employer any excess recovered above the total compensation. This provision might almost be described as an afterthought to prevent unjust enrichment of the employer. Certainly, under the rule of *Silvia v. Scotten*, the employee has no right to complain that settlement was made at an amount which would yield him nothing, nor, indeed, has he the right to complain that the claim was allowed to become barred by passage of time.

This being the fact, we can see nothing in Sparks' argument that the Legislature intended subrogation only of the actual employer as the natural protector of his employees' rights. The employee having no legal rights under the statute, there is nothing to protect. This may seem unfair and, indeed, in *Silvia*

*v. Scotten,* it was specifically recognized as unfair, but the fairness or unfairness of a statutory policy is the concern of the Legislative Branch.[5]

The rule of *Silvia v. Scotten* is not a precise answer to the question before us, but it does establish the primary policy of the subrogation provision, viz., to give a means of recoupment to the out-of-pocket employer.

Sparks admittedly is not out of pocket as a result of the payment of compensation benefits. Such payments as it made were, as we have pointed out in our discussion of its first cause of action, not made as required compensation benefits. If Sparks is permitted to maintain the action, upon recovery it would first reimburse Liberty for the amounts it had paid as benefits and then pay over any excess, less costs of suit, to its employees. It, itself, would retain nothing. Since the purpose of the subrogation provision of the Workmen's Compensation Law is to give a means of recoupment to persons out of pocket by reason of that law, obviously Sparks has no claim to be possessed of the subrogation right.

Sparks attempts to limit the application of the definition of "employer" in § 6112 to those sections of the Workmen's Compensation Law imposing some duty or liability on the employer and to deny its application to those sections conferring rights upon the employer. We think this approach too rigid and superficial. The only limitation on the application of the definition in the act, itself, is one of practicality. Bearing in mind the primary purpose of the subrogation provision, we think it more practical to permit the party which is to be reimbursed to have the right of subrogation.

The Workmen's Compensation Law as a practical matter does not differentiate between the "employer" and "insurer" for

---

[5]*Silvia v. Scotten* has been followed without question by the courts of this state and of the Federal District Court for the District of Delaware. *Cf. Travelers Ins. Co. v. E. I. du Pont de Nemours Co.,* 1 *Terry* 285, 9 *A.* 2d 88, 89 and *Melella v. Savage, D. C.,* 59 *F. Supp.* 258. The correctness of the holding in *Silvia v. Scotten* is not attacked before us.

the most part. It requires all employers except those classified as self-insurers, of which, we understand, there are few, to carry Workmen's Compensation Insurance, 1935 *Code*, § 6096,[6] and requires that the insurance carrier shall agree to be bound by and be subject to all awards and decisions of the Industrial Accident Board, 1935 *Code*, § 6101.[7] The insurance carrier is further required to be bound to a direct promise to the person entitled to compensation to pay all awards made by the Board, 1935 *Code*, § 6102,[8] and penalties imposed for delay in making payments of compensation may be assessed only against insurance carriers and self-insured employers, 1935 *Code*, § 6080.[9] The insured employer is free from imposition of penalties in the event of a delay in the making of payments.

The effect of the above mentioned provisions of the Workmen's Compensation Law is to make the insurance carrier the primary source of payment of compensation benefits. It is forced to assume, when qualifying as an insurance carrier, all the liabilities of the employer with respect to the payment of compensation. The insurance carrier is made the surety of the employer in this respect. Since the liability of a surety was imposed upon the insurance carrier, the Legislature could not have intended to deny it the surety's usual right of subrogation as a means of recoupment of the payments made by it. If such a result was intended it should have been clearly spelled out in the law.

As. a matter of general insurance law, an insurer who pays a loss suffered by the insured is entitled to be subrogated *pro tanto* to any right of action which the insured may have against a third person whose tort caused the loss. 29 *Am. Jur., Insurance*, § 1335. If, however, an insurer pays the loss of the insured in full, so that the insured has no pecuniary interest in

---

[6]Re-codified as 19 *Del. C.* § 2372.

[7]Re-codified as 19 *Del. C.* § 2378(a).

[8]Re-codified as 19 *Del. C.* § 2378(b).

[9]Re-codified as 19 *Del. C.* § 2362.

an action against the wrongdoer, the insured is subrogated completely to the insured's right of action against the wrongdoer. 8 *Couch on Insurance,* § 1997; 11 *Appleman's Insurance Law and Practice,* § 6505; *Restatement of Security,* § 141.

The Legislature in providing that an "employer" who pays or becomes liable to pay compensation shall be "subrogated" to the rights of the injured employee must have had in mind the general nature of the doctrine of legal subrogation, which is based upon equitable concepts of reimbursement of one who pays for another. The use of the legal tag for this doctrine precludes any other conclusion.

We think, therefore, that the Legislature in defining the word "employer" in § 6112 as including the employer's insurer intended that definition to be applied to the provisions of § 6108, when the insurer had paid the compensation benefits to the injured employees. If such is not the case, then the "subrogation" of the "employer" was a misuse of language because, as we have pointed out, the insured employer will have discharged no obligation, nor paid anything. The very basis for "subrogation" would be absent.

It is suggested, however, that in the ordinary case the insurer will not have paid in full the compensation award at the time suit is instituted against the tort-feasor by reason of 1935 *Code,* § 6104[10] which requires that all compensation shall be paid in periodic installments as were the wages of the injured employee, and that, therefore, it oftentimes may be the fact that the compensation benefits have not been paid in full by the insurance carrier at the time the suit for personal injuries is required to be brought in order to avoid the bar of the statute of limitations. We think this makes no material difference. Despite this fact, the insurance carrier is liable for such payment and under the provisions of 1935 *Code,* § 6096[11] may

---

[10]Re-codified as 19 *Del. C.* § 2360.

[11]Re-codified as 19 *Del. C.* § 2372(b).

be made to deposit security for the payment of all awards for which it becomes liable. We take judicial notice of the policy of the Industrial Accident Board to require of all insurance carriers seeking to qualify as compensation insurers the deposit with the State Insurance Commissioner to secure the payment of compensation liability as it is incurred of the sum of $25,000 in cash, or liquid securities. This policy, for all practical purposes, insures that compensation awarded an employee of an insured employer will be paid by the insurance carrier. Thus, it is apparent that at the time of bringing suit for personal injuries an insurance carrier will have paid the compensation award in full, or will have paid it in part and will have given security for the payment of the balance. Under these circumstances, it would be unreasonable to deny the insurance carrier the benefit of the subrogation provision of the statute since it is the only party in a position to claim the benefit of the doctrine of subrogation.

Any other result would be impracticable. For example, if Sparks is held to be the owner of these causes of action, under the holding in *Silvia v. Scotten* it would have complete control of the causes of action, and could sue or not sue as it saw fit. It could, if it so desired, settle for an amount smaller than the amount of compensation benefits paid, not by Sparks, but by Liberty. In such event, the whole purpose of affording a means of recouping for out-of-pocket expenses would have been defeated.

One reported Delaware case relied upon by Sparks should be noticed. This is the case of *Edwin Bell Co. v. Rogers,* 3 *W. W. Harr.* 445, 138 *A.* 903, a decision of the Superior Court dismissing an appeal from an award made by the Industrial Accident Board. The appeal was taken by the compensation insurance carrier although it was not a *pro forma* party to the proceeding before the Board. The appeal was dismissed because of the provision in the act that "either party" may appeal. The correctness of the precise decision in the *Bell* case is not before us, but if

its holding is adverse to the result we have reached in this appeal, we disapprove it.

In conclusion, we note that in other states having Workmen's Compensation Laws with similar provisions to those of the Delaware Law, results similar to the one reached in this appeal on the subrogation question have been reached. *Cf. Western Surety Co. v. Addy, S. D.,* 42 *N. W.* 2d 660; *Employers' Liability Assurance Co. v. Indianapolis & Cincinnati Traction Co.,* 195 *Ind.* 91, 144 *N. E.* 615; *Travelers' Insurance Co. v. Evans,* 101 *Vt.* 250, 143 *A.* 290; *Donahue v. Thorndike & Hix, Inc.,* 119 *Me.* 20, 109 *A.* 187.

For the foregoing reasons, the judgment of the court below on both the first and second causes of action is affirmed.

TUNNELL, Justice (dissenting).

While I agree with the rationale of the majority opinion as to plaintiff's first cause of action, I do not agree at all in respect to the second cause. To permit a party sued in tort to defend upon the ground that the plaintiff is insured seems to me to be a strange new doctrine. Such an innovation appears to be without support in the express terms of our Delaware Workmen's Compensation Act of 1917, as it stood at the time here in question, and, if any ambiguity lurks in the statute which I fail to perceive, requiring judicial interpretation, there would seem to be no call for this particular interpretation on grounds of either public policy or precedent.

In the case of an injured employee who has elected to claim compensation, Sec. 38,[1] Par. 6108, *Revised Code of Delaware* 1935, of the Act takes away any right he may have to sue a third-party tort feasor for damages and gives that right to the "employer". The language of Sec. 38 is perfectly clear, and if it stood alone, Huber[2] certainly could raise no question here.

---

[1]Quoted in the majority opinion.

[2]The same abbreviated nomenclature employed by the majority is used in this dissent.

But it is said that Sec. 42, Par. 6112, *Revised Code of Delaware,* 1935, gives that right of action to the employer's insurance company if it should happen that the employer is insured. This section which is supposed to effect this latter transfer reads as follows:

"Sec. 42.[3] The following shall constitute employers subject to the provisions of this chapter: The State of Delaware, the County of New Castle, every corporation (private, public, municipal or public quasi), every association, every firm and every person (excepting the employers mentioned in Section 48 and Section 49 hereof) having in his, her, or its service any employee defined in Section 43 of this chapter. If the employer is insured, it shall include his, her or its insurer as far as practicable."

In particular, it is the last sentence of this Sec. 42 which is, and must be, relied upon if the employer is here to be denied the status of plaintiff.

But Sec. 42, when read as a whole, appears not to be an ordinary definition, but a delineation of the coverage of the Act, telling, by itself and by reference, what employers must comply with, and what employers may ignore, the Workmen's Compensation Act. Therefore, to scrutinize this general provision in search of language which would settle a controversy arising between an employer and his insurer—both admittedly being "subject to the provisions" of the Act—as to which one of them is intended to be the nominal plaintiff in a suit to enforce the right of subrogation created by Sec. 38, is to look into this provision for treatment of a subject which it would be surprising to find mentioned there at all. The concluding sentence of Sec. 42 seems to me to relate to what went before. It seems to mean no more than this, that, wherever practicable, both the employer

---

[3]The 1935 *Code*, Par. 6112, precedes the text of this section with these words: "Employers, Who Are." This caption is not in the law as it was enacted, *Vol.* 35 *Laws of Delaware*, c. 193, § 1, and its injection into the *Code* may have contributed something to the present difficulty.

and his insurer shall be deemed to be "subject to the provisions" of the Act.[4]

And even if we wrest the final sentence of Sec. 42 entirely out of context, forgetting the language which introduces it, I am still unable to see how defendant Huber can be entitled to the summary judgment here awarded it on the second cause of action. So to hold seems to involve reading the sentence, not as it is written, but as if it were thus:

"Whenever an employer is insured, the word 'employer', wherever it appears in this Act, shall, so far as practicable, be taken to mean the insurer instead of the employer."

That would have been an understandable position had the Legislature taken it. Likewise, it would have been very easy to say if the Legislature had meant to say it. What it did say was this:

"If the employer is insured, it shall include his, her or its insurer as far as practicable."

Whatever this sentence means, we know that it applies to the Act as a whole, not just to some particular portion of it. And, throughout the Act generally, it makes sense to understand the word "include" in this sentence as if the General Assembly had been acquainted with its ordinary meaning and had actually intended in certain provisions to "include" the insurer, not to "exclude" the employer.

It is not appropriate elsewhere in the Act to apply the sentence as it is in effect re-written in the majority opinion. We may note, for example, Sec. 4, Par. 6074,[5] where every employer is described as deemed "to be bound by the * * * provisions of this Chapter * * *"; Sec. 7, Par. 6077, where it is provided that "No agreement, rule, regulation or other device shall * * *

---

[4] A better caption for Sec. 42, therefore, might have been something like this: "Who Are Subject to the Act."

[5] This and other "Par." references are to the *Revised Code of Delaware,* 1935.

operate to relieve any employer * * * from any liability created by this Chapter * * *"; and Sec. 8(b), Par. 6078, where every employer is required to "furnish reasonable surgical, medical, and hospital services, * * *". The statute is literally full of such sections, in which, bearing in mind that Sec. 31, Par. 6101, and Sec. 32, Par. 6102, give the employee his remedy against either his employer or his employer's insurer, it makes sense— or is "practicable"—to include the insurance company along with the employer as being similarly subject to the provisions of the Act.

On the other hand, the Act frequently refers to employers who are, or may be, insured, when it really means the hirers of the men. Examples of this use of the word are Sec. 24, Par. 6094, where every "employer" is required to turn in a report of each accident, indicating therein the "nature of the business of the employer, the location of his establishment or place of work", and other like details; Sec. 25, Par. 6095, where every employer is required to carry insurance covering the payment of the specified compensation; and Sec. 47, Par. 6117, where wages are defined as not including "amounts deducted by the employer under the contract of hiring." Instances appear in abundance in which it is not practicable to read the word "employer" as including both; it cannot possibly have reference to the insurer. But—unless Sec. 38 is the single exception,—there is no place in the entire Act in which the word "employer" is used to refer to the insurer *instead of* the employer. In other words, the possible alternatives are either to "include" the insurer as being also subject to the provisions of the Act, or not to include it, as the sense may require. The first man in the class is the employer; there may or may not be a second one. The employer is in no case—unless this is it—to be "included" altogether out.

There is another instance in the Act in which language appears which is precisely parallel to what we have in Sec. 42. Sec. 11, subd. 9, Par. 6081, contains this provision:

"The terms 'child' and 'children' shall include step-children and adopted children and children to whom the deceased stood in *loco parentis* \* \* \*".

Picture the consternation which would result if this language last quoted, looking exactly like what we now have under examination, were to be construed by some court as the majority has here construed Sec. 42!

As I understand the statute, therefore, Sec. 42 is not meant in any way to alter the meaning of the clear terms of Sec. 38.

So much for the dull, mechanical business of statutory construction. There are more interesting aspects of the question.

Throughout this case—on the briefs, at the argument, and in the courts' opinions—there have been many general references to "subrogation". To me, however, it appears necessary to notice that we here have two instances of subrogation and that the two are not alike.

The one subrogates the rights of the employee to his employer. This is entirely a creature of statute and carries with it not merely the right to recover what has been, or is to be, paid to the employee, but all rights whatever which the employee has acquired against the tort-feasor by reason of the tort. Further, even though the ultimate right of this subrogee is to share in only a *part* of the recovery, if, indeed, in any of it at all, the common-law rule[6] is departed from, and the subrogee is expressly given the right to bring the suit in his own name.

The other instance of subrogation is of the employer's rights to his insurer. This is subrogation in its ordinary sense, in which recovery is limited to the amount that the insurer is out of pocket. As Mr. Justice Stone said in *Aetna Casualty & Surety*

---

[6]For references to the general rule, see *Doleman v. Levine*, 295 *U. S.* 221, 55 *S. Ct.* 741, 744, 79 *L. Ed.* 1402; 29 *Am. Jur.*, *"Insurance"*, § 1355, 50 *Am. Jur.* 774; and *Anno.* 96 *A. L. R.* 865, *et seq.*; *Ierardi v. Farmers' Trust Co.*, 4 *W. W. Harr.* 246, 252-253, 151 *A.* 822.

*Co. v. Phoenix National Bank & Trust Co.*, 285 *U. S.* 209, 214, 52 *S. Ct.* 329, 331, 76 *L. Ed.* 709:

"It is both the object and the justification of subrogation that it makes exact indemnity the measure of the liability."

Obviously this type of subrogation is not based upon any supposed privity between the insurer and the third person sued, but "is derived from the insured alone". *Doleman v. Levine*, 295 *U. S.* 221, 55 *S. Ct.* 741, 79 *L. Ed.* 1402; 29 *Am. Jur.*, 1001. Where, as here, the damage suit has a larger potential than is required to indemnify the insurance company, the action may not be brought in the name of the insurer. 29 *Am. Jur.*, *"Insurance"*, §§ 1355, 1358; *Norwich Union Fire Insurance Soc. v. Standard Oil Co.*, 8 *Cir.*, 59 *F.* 984; *Continental Insurance Co. v. H. M. Loud & Sons Lumber Co.*, 93 *Mich.* 139, 53 *N. W.* 394; *United States Fidelity & Guaranty Co. v. Graham & Norton Co.*, 254 *N. Y.* 50, 54, 171 *N. E.* 903.

To this kind of subrogation Liberty is undoubtedly entitled, both under the express terms of its contract with Sparks and by virtue of those principles which would apply even if the policy had failed to provide it. 29 *Am. Jur. "Insurance"*, § 1339. Therefore, if Huber had lost this case, Liberty would still be safely subrogated, up to the sum of the compensation payments, in any judgment which Sparks might recover. It made those payments in its capacity as insurer of Sparks. It is possible, therefore, to "derive from" Sparks the power to recover them.

But the right Sparks has to recover sums in excess of the compensation is a very different matter. This is not a common law or equitable right of Sparks in its own behalf, but was conferred upon it by the General Assembly. Such an assigned authority, of course, would not be assignable all over again. *Restatement of Agency*, § 78; *Shankland v. Mayor, etc., of Washington*, 5 *Pet.* 390, 8 *L. Ed.* 166.

Sparks is the agent designated by the statute to sue, either in its own name or in those of the employees involved, for the benefit of the employees. In order to avoid multiplicity of

actions, this also necessarily means that Sparks is the agent to sue for the protection of Liberty. Sparks might also have had subrogated interests of its own to protect if it had been able to prove what it alleged in its complaint, a contract for compensation payments over and above those provided by the Act.

This cannot be understood as sacrificing or imperiling the interests of Liberty. If Sparks should fail to prosecute the action in good faith and with reasonable diligence, Liberty is afforded ample protection in a court of equity. In the field of indemnity insurance this is a routine affair. *Couch, Cyclopedia of Insurance Law*, § 1996; *Vol.* 11, *Appleman, Insurance Law and Practice*, § 6505; *Aetna Life Insurance Co. v. Moses*, 287 *U. S.* 530, 53 *S. Ct.* 231, 77 *L. Ed.* 477.

But it is argued that the defendant's construction of Sec. 38 is demonstrated as being the only correct one by reason of a certain principle of public policy arising out of the purpose of the section. The true intent of this section, it is said, is to hand the cause of action to the one who has paid, or become liable to pay, the compensation. That reasoning however, fails in two respects to be satisfying to me.

When a payment has actually been made, who made it is a fact which can be established with certainty. But so long as two persons are both liable for a payment which is not yet made, there must be some degree of uncertainty as to who will eventually be the one to pay. Sec. 38 does not say that the subrogation is to be in favor of whoever has "paid" the compensation; it says that subrogation shall be to "the employer having paid the compensation or having become liable therefor". Thus, while the courts, in the circumstances of this particular case, have felt able to say that the insurance company has the subrogation right, instead of the employer, one is left in perplexity as to how their method of identifying the proper plaintiff would operate if the obligation had not yet been paid, but had merely been fixed for future payment. The discussion in the majority opinion, to the effect that the insurer in all cases is the only one

who is likely to have to pay, seems to put in question a principle which I had heretofore thought was undoubted, that is, that the employer, prior to discharge of the obligation, is always liable to the employee, even where he has insurance. Sec. 4, Par. 6074, and Sec. 31, Par. 6101.

Secondly, to say that the public policy which inspired the statute was the evident fairness of giving the right of action to whoever has paid the compensation, or whoever seems more likely to be in line to pay it, seems to leave something dangling, for the cause of action transferred is in no sense the equivalent of the obligation which was paid or established.

The defendant, in concentrating upon the supposed purpose of Sec. 38, may have missed the mark because it has left out of account the purpose of the Act as a whole. As has so often been said, the Act was obviously intended for the benefit of employees, to give them quick and certain assistance in a time of trouble. No such remedy had theretofore existed. Just as this court, in *Sylvia v. Scotten*, 2 *W. W. Harr.* 295, 122 *A.* 513, could conclude that the Act was not designed to affect third-party tort-feasors, likewise, we may reason that it was not primarily concerned with the mechanics by which an insurance carrier, after a loss, would adjust with his insured. The machinery for compelling the employer to do whatever was necessary for accomplishing that adjustment was already in existence; it was entirely adequate; no statute was needed to implement it; and, of necessity, the procedure was perfectly familiar to every person, firm, or corporation in the insurance business. Why should "public policy" call for what we already had?

It seems to me that if public policy has any bearing on this case, we should instead concern ourselves with the election provided the employee. In practice, of course, an employee's election to take compensation may be made because the employee is without funds and has no practicable alternative to taking it, or because of confidence that his employer will protect his interests, or because he uses no intelligence in the matter at all,

or by reason of some combination of these or other fortuities. But the statute purports to give the employee an "option", and since it plainly is a public welfare statute for improving the lot of employees, if there is any need for "construction", are we not bound to suppose that this "option" is intended to be a choice which is capable of being intelligently exercised?

The employee might well know how he stands with the man who hires him, and he might either know or be able to learn what that man's feelings are toward the tort-feasor. He might well discover whether his employer has any connections with any insurance company which could affect his attitude toward the employee. But while the employee would, or could, know the name of his employer's insurer, it is doubtful that he could even learn whether the tort-feasor had insurance, and, if so, who the insurer happened to be. Therefore, if "employer" here means his employer's insurance company, the employee, instead of having an option between alternatives which he could reasonably weigh and analyze, would be able only to grope in the dark. And if, as here, the employer's insurer turned out to be the tort-feasor's insurer, so that any money the employee would get would have to be at his so-called "employer's" expense, this option might be a veritable booby trap.

It is said that the alternative which begins by taking compensation has already been established as being without any real substance, because Chancellor Josiah Wolcott, in *Sylvia v. Scotten*, pointed out with sharp regret that the employee is dependent for any hope of further recovery upon the "grace" or "interest" of the employer. That, of course, is an unfortunate weakness in the statute. But it does not necessarily mean that the employee need too often be altogether undone by his election to take compensation. Whose "grace" and whose "interest" are meant, as we see here, may make all the difference. Chancellor Wolcott's opinion did not even touch upon that vital question. *Sylvia v. Scotten* settled that the employee is squeezed out of the negligence litigation and that he is left wih a mere

expectancy which he can do little or nothing to further. Now we are confronted by this question: whether or not the employer, as statutory agent of the employee, is also to be squeezed out of the litigation. Certainly ours must be a different problem.

That the General Assembly may have designated the employer to act as the plaintiff as a matter of deliberate public policy, for the express purpose of affording some measure of protection to the employee, is a possibility emphatically illustrated by the coincidence of rights occurring here, where plaintiff's insurer also insured one of the defendants. To put the litigation in the control of the employees who had already collected compensation might turn out to be very troublesome to the insurers. Doubtless there would be many attempts at the forbidden double collection. Moreover, insurance companies, dealing with each other all the time, as they must, would often be interested in both sides of a case, and even when they were not, they might, by common consent, too easily fall into the practice of never making any effort to procure anything for the employee over and above the compensation specified in the Act.

Finally, while putting the litigation in the hands of the insurance company might frequently be calamitous to an employee, on the other hand, in spite of pitiful intimations to the contrary, no reason appears why this should ever be in any respect injurious to an insurer *in so far as his right to recover the compensation* is concerned. In other words, allowing Sparks to sue can do no harm to Liberty as the compensation insurer of Sparks, though, admittedly, it might cost Liberty money in its capacity as liability insurer of Huber.

Therefore, if the "policy" of the statute has anything to do with this decision—which I deny—it impels us to permit Sparks to proceed with the suit.

*Now to the relatively unfruitful discussion of precedents.*

At the conclusion of the majority opinion, four authorities are cited from other jurisdictions as having reached "results

similar to the one here reached." The first three were cases in which insurance companies had brought suits in their own names. The fourth, *Donahue v. Thorndike & Hix, Inc.*, 119 *Me.* 20, 109 *A.* 187, was a case where the suit was brought in the name of the administratrix of a deceased employee. The second and third cases, *Employers' Liability Assurance Co. v. Indianapolis & Cincinnati Traction Co.*, 195 *Ind.* 91, 144 *N. E.* 615, and *Travelers' Insurance Co. v. Evans*, 101 *Vt.* 250, 143 *A.* 290, seem to stop with a holding that the insurer is "included" in a class of proper plaintiffs. Not any of the four covers the question as to whether the employer can sue. None involves any test of rights as between the employer and his insurer. In so far as these cases, or the dicta they contain, have any pertinency to the question before us, it seems to me that they stand in a line of authorities, of which *Otis Elevator Company v. Miller & Paine*, 8 *Cir.*, 240 *F.* 376, is perhaps the leading one, which hold that it is no business of the defendant tort-feasor where the money goes which he will be required to pay if judgment is rendered against him in favor of the insurer, the employer, or the employee.

In *Donahue v. Thorndike & Hix, Inc.*, for example, where, as above stated, suit had been brought by the personal representative of the deceased employee, and it was sought to amend the declaration by naming the insurer as plaintiff, the Supreme Judicial Court of Maine deemed the amendment allowable but entirely unnecessary, citing and quoting from the *Otis Elevator* case. In the *Otis Elevator* case the suit was, as here, brought by the employer, and the defendant objected that it should have been brought by the insurer. In disposing of the point, Judge Carland, speaking for the Circuit Court of Appeals for the Eighth Circuit, said, 240 F. at page 380:

"The second proposition advanced by counsel for the Elevator Company is based on the fact that the Elevator Company at the trial below offered to show that the liability of Miller & Paine under the Compensation Act had been insured by an insurance company licensed to do such business in the state of Nebraska, and that therefore, as Miller & Paine would suffer

no damage, it could not recover any damages against the Elevator Company. But this argument involves a misconception of the action brought by Miller & Paine. That action was to be tried just the same as if it had been brought by the administrator of the estate of Pettengill. If nothing had been paid by Miller & Paine, or other person for them, the whole recovery would go to the dependents of Pettengill. Just how the amount recovered in this action shall be divided as between the dependents, Miller & Paine, or the insurance company, is no concern of the Elevator Company."

If one accepts the liberal view of the principle of *res judicata* which these cases as a class represent, Huber's motion for summary judgment in the second cause of action must be denied. If one rejects that view, the rejected doctrine itself distinguishes the cases.

On all counts, therefore, I am compelled to conclude that the proper order for this court to enter would be an affirmance of the judgment of the Superior Court on the first cause of action and a reversal of the one granted on the second cause.