MYRA BERWALD and ABRAHAM H. BERWALD,
Appellants,

*vs.*

MISSION DEVELOPMENT COMPANY, a Delaware corporation,
Appellee.

*Supreme Court, On Appeal, November 5, 1962.*

*Irving Morris* of Cohen & Morris, Wilmington, and *David M. Palley,* and *Spencer Pinkham,* New York City, for appellants.

*Henry M. Canby* of Richards, Layton & Finger, Wilmington, for appellee.

SOUTHERLAND, Chief Justice, and WOLCOTT and TERRY, JJ., sitting.

SOUTHERLAND, Chief Justice: Plaintiffs, owners of 248 shares of the stock of Mission Development Corporation, brought suit to compel the liquidation of Mission and the distribution of its assets to its stockholders. Mission answered and filed a motion for summary judgment, based on affidavits and depositions. Plaintiffs tendered no contradictory proof. The Vice Chancellor granted the motion and the plaintiffs appeal.

The facts are as follows:

Defendant, Mission Development, is a holding company. Its sole significant asset is a block of nearly seven million shares of Tidewater Oil Company. Tidewater is a large integrated oil company, qualified to do business in all the States of the Union. It is controlled, through Mission Development and Getty Oil Company, by J. Paul Getty.

Mission Development was formed in 1948 for the purpose of acquiring a block of 1,416,693 shares of Tidewater common stock then owned by Mission Corporation, a Nevada corporation. Its avowed purpose was to invest only in Tidewater stock, and in further-

ance of this purpose to acquire additional stock to fortify its position in Tidewater. Accordingly, Mission of Delaware issued to Mission of Nevada 2,833,386 shares of its common stock and received the block of Tidewater stock held by Mission. Appropriate orders under the Investment Company Act were obtained from the Securities and Exchange Commission. The shares of both Mission Development and Tidewater are listed on the New York Stock Exchange.

Mission of Delaware will be hereinafter referred to as "Mission".

From 1948 to 1951 Mission acquired an additional 1,050,420 shares of Tidewater. Thereafter, and by 1960, Mission's holdings of Tidewater, through a 100% stock dividend and annual stock dividends of five per cent, increased to 6,943,957 shares.

In 1954 Tidewater discontinued the payment of cash dividends, thus effecting a discontinuance of Mission's income. Mission, as above noted, received thereafter until 1960 an annual 5% stock dividend, but Mission's proportionate ownership of Tidewater was not thereby increased, and its management accordingly deemed it unwise to distribute the shares as a dividend, since to do so would have decreased its proportionate ownership of Tidewater.

As hereafter shown, Tidewater's discontinuance of cash dividends was prompted by the adoption in 1954 of a policy of corporate expansion and modernization. The use of its available cash for this purpose left it without funds for dividends.

Later in the same year, Tidewater proposed to its stockholders to exchange shares of its cumulative $1.20 preferred stock for shares of its common stock held by the stockholders. Getty Oil Company and Mission were excluded from this offer.

All of the foregoing facts were reported to Mission stockholders by letter of J. Paul Getty, President of the corporation, dated April 11, 1955.

We pause to note that some of the plaintiff's stock in Mission Development was bought in 1956 and 1959.

In 1960 Tidewater discontinued the practice of distributing stock dividends. In the same year it submitted to its stockholders an ex-

change offer similar to the one made in 1955, again excluding Getty Oil and Mission.

From September 1960 to and including August 1961 Getty Oil Company acquired 510,200 shares of Mission. Some of these were purchased off the market.

In November 1960 this suit was filed.

As above indicated, plaintiffs seek to compel a complete or partial liquidation of the defendant and the distribution of its assets, either through the medium of a winding-up receivership, or by means of a court order compelling the management to distribute, or to offer to distribute, at least part of the Tidewater shares in exchange for Mission shares.

The extreme relief of receivership to wind up a solvent going business is rarely granted. To obtain it there must be a showing of imminent danger of great loss resulting from fraud or mismanagement. *Hall v. John S. Isaacs, etc., Inc., 39 Del.Ch. 244, 163 A.2d 288, 293.* Like caution is dictated in considering an application to compel a corporation to make a partial distribution.

Since no showing is made of fraud or mismanagement inflicting injury upon the corporation, what is the basis of plaintiff's case?

Plaintiff's argument proceeds as follows:

There is an inherent conflict of interest between the controlling stockholder of Mission, Mr. J. Paul Getty, and the minority stockholders. This arises out of the dividend policy of Tidewater. Because of high income taxes, Mr. Getty, it is said, is not interested in receiving dividends; he is interested in acquiring more shares of Tidewater. To achieve this end, it is charged, he has caused Tidewater to discontinue all dividends and to announce, in 1960, that no dividends could be expected for five years. The necesary effect of this policy, plaintiffs say, was to depress the market value of Mission shares, and enable Mr. Getty to buy more Mission shares at an artificially low price, at the expense of Mission's minority stockholders. This, plaintiffs charge, is just what he has done, as is proved by Getty

Oil's purchases of stock in 1960 and 1961. Thus he and Mission have inflicted a serious wrong upon the minority stockholders.

It is quite true that in some cases the interests of a controlling stockholder and of the minority stockholders in respect of the receipt of dividends may conflict, because of the existence of very high income taxes. See *Cases and Materials, Baker and Cary*, p. 1375. And in some cases this may work hardship on the minority. But we find no such situation here.

It is plain that the whole argument based on a charge of conflict of interest rests upon the claim that Tidewater's dividend policy, and its public announcement of it, were designed to serve the selfish interest of Mr. Getty and not to further its own corporate interests. If the opposite is true—if Tidewater's policy was adopted in furtherance of its own corporate interest—then Mission's stockholders have not been subjected to an actionable wrong and have no complaint. The fact of Mr. Getty's purchase of Mission Development stock then becomes irrelevant.

What does the record show with respect to Tidewater's dividend policy?

In the ten years prior to 1953 Tidewater's expenditure for capital improvements did not exceed $41,100,000 in any one year. Shortly prior to 1954 Tidewater began to expand and modernize its facilities. In February 1955 it closed and subsequently sold its obsolete refinery at Bayonne, New Jersey, and built a new and modern refinery in New Castle County, Delaware at a cost in excess of $200,000,000. Also, it commenced and still continues the expansion and modernization of its refinery facilities at Avon, California, and the increase of its crude oil and natural gas resources. As of November 3, 1960, the budget for new capital projects to be begun in 1961 was $111,000,000.

It is unnecessary to elaborate the point. It is entirely clear from the facts set forth in the affidavits that Tidewater's cash has since 1960 been largely devoted to capital improvements and that, in the opinion of management, funds were not available for dividends. These facts are uncontradicted, and they constitute a refutation of the basic

argument of plaintiffs that dividends were discontinued to enable J. Paul Getty to buy Mission stock at a depressed price.

Some point is sought to be made of the unusual action of the Tidewater management in announcing that dividends could not be expected for five years. As defendant's counsel says, this was done out of common fairness to its stockholders and to prospective purchasers of its stock.

It is earnestly argued that plaintiffs should be allowed to go to trial and adduce testimony on the issue of the selfish motives of the controlling stockholder. Plaintiffs say that they could show by expert testimony that the market price of Mission common was artificially depressed.

■ It is first to be noted that the record of market prices put in by the plaintiffs themselves fails to show any drop in prices coincident with or closely following the announcement of the cessation of dividends. Plaintiffs reply that this fact is meaningless because at that time the market was steadily going up, and say that expert testimony will establish this. The answer to this argument is that if plaintiffs had such proof they should have come forward with it. "In such a situation, a duty is cast upon the plaintiff to disclose evidence which will demonstrate the existence of a genuine issue of fact * * * if summary judgment * * * is to be denied." *Frank C. Sparks Co. v. Huber Baking Co.*, 9 *Terry* 9, 48 *Del.* 9, 96 *A.2d* 456, 459.

There are other facts in this case that support the conclusion above indicated. The sole corporate purpose of Mission is and has been to hold Tidewater stock. Any investor in its shares could readily ascertain this fact. Because of this he knows, or should know, that he is buying for growth and not for income.

Some point is made of the exclusion of Mission from the exchange offers made by Tidewater to its stockholders in 1954 and 1960. Obviously, for Mission Development to have been included in the exchange would have defeated the very purpose of its corporate existence.

■ However the various arguments are put they come to this: Plaintiffs are in effect seeking to wind up the corporation, either

wholly or partially, because it is doing exactly what it was lawfully organized to do.

We think the plaintiffs have failed to make a case.

The judgment below is affirmed.