ESTHER R. WARSHAW,
Plaintiff,

*vs.*

W. K. CALHOUN, CHARLES F. CURRY, F. W. DUBOC, RAY B. DUBOC, ROBERT M. DUBOC, W. L. GENCH, JOHN LATSHAW, K. H. MEAD, C. C. OTTO, WESTERN CASUALTY AND SURETY COMPANY, a Kansas corporation, and THE WESTERN INSURANCE SECURITIES COMPANY, a Delaware corporation,
Defendants.

*New Castle, October 5, 1965*

*Leroy A. Brill,* of Bayard, Brill, Russell & Handelman, Wilmington, Laventhall & Zicklin, and Javits, Trubin, Sillcocks, Edelman & Purcell, New York City, for plaintiff.

*Henry M. Canby* and *Richard J. Abrams,* of Richards, Layton & Finger, Wilmington, and Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, Mo., for moving individual defendants.

*Richard L. McMahon,* of Berl, Potter & Anderson, Wilmington, and Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, Mo., for corporate defendants.

Seitz, Chancellor: Plaintiff, as a common stockholder of defendant, The Western Insurance Securities Company ("Securities"), brings a class action against and a derivative action on behalf of Securities, a Delaware corporation. In addition to Securities and its officers and directors, the defendants are Western Casualty and Surety Company ("Casualty"), a Kansas corporation, and two of its directors. The appearing individual defendants as well as the corporate defendants have moved for summary judgment on the ground that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law.

The corporate defendants spell out the basis for their motion as follows:

1. No relief is sought by plaintiff from Casualty.

2. Plaintiff fails to state a claim upon which relief can be granted for [1] or against Securities.

After the filing of affidavits and the submission of certain discovery material, the matter was submitted on briefs. This is the decision on the two motions for summary judgment.

Some admittedly undisputed factual background will point up the plaintiff's claims.

Casualty was a mutual association created in 1910. In 1922 Ray DuBoc and E. C. Gordon (deceased) assumed control of it. In 1924 Casualty was incorporated to succeed to the association's business, and the DuBoc-Gordon interests controlled the corporation. Casualty was and is a large and apparently successful insurance company writing policies in the automobile liability, fire and casualty, etc., fields.

In 1925 Securities was incorporated. It has outstanding 7,000 shares of 6% preferred, 35,000 shares of Class A and 50,000 shares of Common stock. In certain cases of dividend defaults the Class A

---

1. I need now express no opinion concerning the propriety of the corporate defendant for whose benefit the derivative aspect of the cause is brought raising this defense.

may elect a majority of the directors, otherwise the common has voting control. Securities has no active business. Since its inception it has been a holding company whose only significant asset is 415,280 shares (now 41.54%) of the common stock of Casualty. When it was incorporated, the DuBoc-Gordon stock in Casualty was transferred to Securities and it in turn issued its shares to them in amounts which represented and still represent control thereof. Minority stock interests in Securities are held by the general public, including plaintiff. It is clear that the DuBoc-Gordon group has not only been in control of Securities but indirectly of Casualty since these companies were incorporated, there being substantial common representation of the group on the boards and among the officers of both corporations.

Because its income has been and is derived almost entirely from dividends and because of the extent of the DuBoc-Gordon stock interest in Securities, it has been, over the years, and is now classified as a personal holding company for Federal income tax purposes. Plaintiff says the DuBoc-Gordon group, in continuing the existence of Securities under the circumstances, has done so for its own selfish interests and to the detriment of its minority stockholders in the respects hereinafter considered.

██ I commence the analysis from the accepted premise that since we are dealing with defendants' motions for summary judgment, they have the burden of demonstrating that there is no dispute as to any possible issue of fact material to any valid legal theory advanced by plaintiff.

Plaintiff contends that since there was no stockholder ratification of their actions the individual defendants, who control Securities, have the burden of showing the fairness of the matters under attack. She goes on to argue that the record made by them is devoid of evidence showing the fairness of continuing Securities as a personal holding company and of any consideration being given the interests of the majority shareholders of Securities. Plaintiff adds that even though defendants have not met their burden, she has gone forward to show affirmatively that there are material disputed factual issues. Defendants argue that plaintiff's claims lack legal substance and that

any facts material to their disposition are not in dispute. Rather, they say the dispute is merely as to the proper inferences to be drawn from undisputed facts.

Basically, plaintiff questions the right of the controlling stockholders to maintain Casualty under its existing status in view of the consequences thereof. Thus, she contends that the following detriments to Securities and thus to its stockholders have arisen from or as a necessary consequence of its personal holding company status:

1. Securities' common stock regularly sells at a substantial discount from its asset value, made up largely of its Casualty holdings.

2. Unnecessary expenses and taxes have been incurred by Securities merely because it is a holding company.

3. Corporate opportunities have been lost to Securities by its failure to exercise rights to buy Casualty stock.

4. As a result of (3) Securities stock interest in Casualty has been reduced from 92% to 41.5%.

5. As a consequence of (3) and (4), the equity of Securities in Casualty's growing profits has been· shrinking.

6. The rights to buy Casualty stock were transferred for inadequate consideration solely in the interest of the majority stockholders.

7. By maintaining its large holdings of Casualty stock, and consequent control, Securities has restricted the supply of Casualty stock and discouraged purchases by institutional investors with a resultant depression in Casualty's stock value in comparison with the price of stocks of other publicly owned insurance companies.

■■ I first consider plaintiff's contentions concerning the discount factor and unnecessary expenses and taxes (claims (1) and (2)). Since Securities is a solvent corporation, a heavy burden is cast on anyone seeking in substance to have the court liquidate it. This case must also be judged in the light of the undisputed fact that this dual corporate arrangement was in existence for many years

before plaintiff became a stockholder of Securities. Thus, the "discount" factor was an "historic" fact in the published records of these two corporations, and admittedly known to plaintiff. In this setting at least, the mere fact of the existence of the discount factor is not a legal basis for forcing the termination of Securities' separate existence or requiring it to distribute its Casualty stock. *Berwald v. Mission Development,* 40 *Del.Ch.* 509, 185 *A.2d* 480; see *Manacher v. Reynolds,* 39 *Del.Ch.* 401, 165 *A.2d* 741.

No charge is made that Securities' expenses and taxes were unreasonably incurred, apart from the argument based on the unreasonableness of maintaining Securities with its existing status. Consequently, I think this aspect of plaintiff's claim can only have possible legal merit if the continuance of Securities is subject to successful legal attack on some other ground.

Plaintiff says and defendants do not deny that Securities never advised its stockholders of its personal holding company status and the consequences thereof. What would plaintiff have the court do about it? Plaintiff says she did not know about the tax feature and presumably would not have purchased her stock had she been aware of it. But she does not base any independent claim for relief on such fact. Certainly, in and of itself, it would not justify the liquidation of Securities. It should be noted that the personal status of the holding company is not the factor which creates the discount factor. Such a factor seems common in this general corporate arrangement, *e.g.,* see *Manacher v. Reynolds,* above. Finally, the majority stockholders are not required to dissolve a corporation because their holdings have the effect of creating a policy which circumscribes the corporation's activities.

I conclude that the undisputed facts show that claims (1) and (2) lack merit.

Plaintiff next claims that the DuBoc-Gordon group caused Casualty to issue stock rights at various times but did not use its control to cause Securities to exercise its rights. This, she says, resulted in a dilution of its ownership and relative earnings interest in Casualty and came about through an improper failure to exercise corporate opportunities.

■■ The undisputed facts show first that Securities had no money available to exercise its rights because it distributed its income to avoid high taxes. This flowed from the fact that, being a personal holding company, it had to distribute all of such income to avoid a high income tax (70% since 1964). Securities thus finds it prohibitive to accumulate income for expansion, diversification, etc. and of importance here, it did not and does not have money to finance stock purchases or make other acquisitions out of income. Once again, the lack of available income was a consequence of a distribution policy dictated by its status as a personal holding company. In this situation at least, the Delaware law does not require the majority stockholders to change their stock holdings in order to alter the corporate tax consequences of such holdings. The assumed desirability of such a change is not a matter for the court.

■ Next, the undisputed facts concerning Securities' selling its rights to purchase Casualty stock to a brokerage firm on three occasions (plaintiff may only complain of the last two), do not justify an inference that they constituted, under the circumstances, an unjustifiable refusal to exercise a corporate opportunity. Much is made of the fact that the corporation should have passed the rights along to its stockholders but this in part would have frustrated the very purpose sought to be served by transferring them to the brokerage house, *i.e.,* to widen the stock ownership of Casualty. Moreover, while I infer that the rights had more than nominal value, I conclude that their value in the premises in comparison with the purpose sought to be accomplished, did not rise to the point where the business judgment rule was rendered inapplicable. Certainly the decision did not result, in and of itself, in any more "detriment" to the minority stockholders of Securities than to the DuBoc-Gordon controlling stockholders.

Since I have found that the action of the Securities' board with respect to the treatment of stock rights in Casualty is not subject to attack, it follows that the consequent decline of Securities "equity" in Casualty is not a ground for objection. The fact that Securities' stock ownership in Casualty has shrunk, with a resultant decrease in Casualty's claimed growing profits, does not mean that Securities' policy

decision which brought about that condition is legally objectionable. I need not now decide whether a different situation would be presented if Securities' "control" of Casualty was jeopardized by its corporate policy and/or tax status.

Plaintiff claims that the record supports the conclusion that the individual defendants caused the stock rights in Casualty to be sold for nominal consideration rather than passed through to Securities' stockholders because the DuBoc-Gordon group was not in a financial position to exercise such rights (claim 6). Assuming they lacked such funds, it does not follow that the directors' "failure" to pass the rights through to Securities' stockholders violated their fiduciary duty. The undisputed facts are in the record. The dispute concerns the inference which may be justifiably drawn therefrom. Assuming that the individual defendants have the burden of justifying the sale of the stock rights, rather than handling them as plaintiff suggests they should have, I am satisfied that the facts reasonably support the action taken by Securities' board. If an inference could be fairly drawn that their lack of money was the principal or only reason the controlling stockholders did not pass the rights through to the stockholders, and the minority were substantially prejudiced, then a stronger case might be made for the plaintiff. I say this despite the availability of Casualty's stock at about the price fixed in the rights. But the decision did not benefit the majority stockholders at the expense of the minority. To suggest that the result was a greater detriment to the minority is, once again, to quarrel with consequences flowing from the very nature of the corporate structure. In reaching my conclusions I have either relied on undisputed facts or assumed the facts to be as claimed by plaintiff.

I turn to plaintiff's seventh contention that Securities, by maintaining its large holdings in Casualty, has discouraged its purchase by institutional investors and thereby inhibited its increase in value. I must first note that this is somewhat inconsistent with plaintiff's claim that Securities should have exercised the stock rights issued to it or passed them along to its stockholders. In any event, it is clear that the undisputed facts do not support plaintiff's claim. But the ultimate answer is that the contention, if factually supported,

would not justify any of the relief requested by plaintiff. Securities is not required under existing state law to reduce its holdings in Casualty stock.

It can be seen that plaintiff's case comes down to a contention that some of Securities' business decisions, made by its controlling stockholders in their board or officer capacities, were dictated by its tax status; that they were for the benefit of the majority stockholders and were prejudicial to the interests of the minority stockholders. Indeed, in her brief, plaintiff states that defendants dealt with the Securities' holdings in Casualty "with only one end in view—to preserve their control" and that this caused them to neglect the interests of the minority stockholders. When the acts complained of are analyzed, it is apparent that plaintiff (1) is quarreling with the consequences of the continuation of Securities' tax status, and (2) is claiming that decisions with respect to the rights offerings were prejudicial to the minority stockholders.

It is clear that the tax status did handicap Securities in some ways but this was not a new development. As noted, no independent claim is made that the DuBoc-Gordon group is responsible to plaintiff or members of her class for failing to disclose this status. Other factors apart, the law does not require that the majority stockholders dissolve Securities merely because its tax status, arising in part by the extent of their stock ownership, imposes practical limitations on its activities. The claims with respect to the rights' offerings, as I have noted, are without merit.

I therefore conclude that the facts relevant to the disposition of the motions are either undisputed or may be assumed as claimed by plaintiff. The reasonable inferences therefrom demonstrate that plaintiff's claims lack merit. It is not necessary to consider other defenses raised by defendants.

I conclude that defendants' motions for summary judgment dismissing the complaints should be granted.

Present order on notice.