**Eric LARSON, Plaintiff**

**v.**

**MILL CREEK FIRE COMPANY, Les Brown, and Aaron Olicker, Defendants.**

**Civil Action No. 09C–04–026–JOH.**

Superior Court of Delaware, New Castle County.

Submitted: Feb. 3, 2010.

Decided: June 4, 2010.

362

Matthew M. Bartkowski, Esquire, of Kimmel Carter Roman & Peltz, Newark, Delaware, Attorney for the Plaintiff.

Jonathan L. Parshall, Esquire, of Murphy & Landon, Wilmington, Delaware, Attorney for the Defendants.

## OPINION

HERLIHY, Judge

Both the County and Municipal Tort Claims Act and the Workers' Compensation Act contain specific provisions concerning volunteer firefighters. However, those two provisions lead to somewhat conflicting classifications. Under the County and Municipal Tort Claims Act, a volunteer firefighter is immune from suit but for a limited series of actions; therefore, he or she must be considered a county or municipal employee under that Act.

On the other hand, the Workers' Compensation Act mandates that, for the purposes of that Act, volunteer firefighters shall be treated as state employees. The motion under the Court's consideration requires it, as a matter of first impression, to define volunteer firefighters' employer and that determination ultimately decides two volunteer firefighters' status as defendants in a personal injury action brought by a third volunteer firefighter.

Plaintiff Eric Larson of the Cranston Heights Fire Company filed suit against Aaron Olicker and Les Brown, both firefighters with the Mill Creek Fire Company and also against Mill Creek Fire Company. He was injured by Olicker's and Brown's alleged negligence when Larson was descending a ladder pursuant to an emergency evacuation. Larson alleges that Olicker retracted the ladder at Brown's command and crushed his foot in between its steps. The defendants have filed two motions for summary judgment. The firefighters and Mill Creek defendants argue that the exclusivity provisions found in the Workers' Compensation Act immunize them, or, in the alternative, that they can take advantage of the Borrowed Servant Doctrine in order to utilize the same exclusivity provisions.

Olicker and Brown filed their own motion independent of Mill Creek. They argue that they were never properly served nor were their actions willful and wanton under the County and Municipal Tort Claims Act, which is required in order to attach liability.

The Court finds that the Worker's Compensation Act means Larson, Olicker and Brown are all employed by the State of Delaware. Therefore, the individual defendants can invoke the exclusivity provisions of the Workers' Compensation Act to immunize them from Larson's action. The same cannot be said, however, for Mill Creek because the Workers' Compensation Act is silent about how it relates to *fire companies,* and the Court does not find the necessary implication required to extend its holding beyond firefighters to fire companies. Also, there are genuine issues of fact that preclude summary judgment with respect to the Borrowed Servant Doctrine's application to Mill Creek. Finally, because the Court grants judgment in favor of Olicker and Brown, there is no need to decide the service of process or Municipal and County Tort Claims issues concerning them.

### Factual Background

On April 7, 2007, Eric Larson was a volunteer firefighter member of the Cranston Heights Fire Company. He was in charge of a unit of other Cranston Heights firefighters who responded to a fire at the Village of Plum Run Townhouses in suburban Wilmington. They are located in the jurisdiction/territory of the Mill Creek Fire Company. By practice among fire companies, the overall fire suppression effort was commanded by Chief J.D. Howell of Mill Creek. Howell ordered Larson and his unit to go onto the roof to chop holes in it to provide ventilation for the fire below. After being on the roof a short time, Howell issued an emergency evacuation order, requiring everyone off the roof and to report to their chiefs to be counted to ensure everyone was safe.

While Larson was descending the ladder, Mill Creek Assistant Chief, volunteer firefighter Les Brown, became concerned with the length of time it was taking Larson to get off the roof. He started to shout at him (using expletive language) to get down the ladder more rapidly. At the same time, Aaron Olicker, a full time professional Mill Creek firefighter, was at the ladder's control.[1] He was concerned about a gap between the roof from which the firefighters were descending and the ladder. He intended to reposition the ladder so it would have no gap. Olicker testified at his deposition that he saw Larson descending the ladder and yelled to him that he was going to move it. Shortly after, Brown yelled at Olicker, "Get him off the ladder. Move that [expletive deleted] ladder now."[2] Olicker retracted the ladder and Larson's foot was crushed between two steps in it.

As a result of his injuries, Larson received state-paid workers' compensation through the Delaware Volunteer Firemen's Association and was able to return to work on December 2, 2007.

Larson filed suit against Mill Creek, Olicker and Brown. Before the Court are two motions. The first is all three defendants' motion for summary judgment based upon workers' compensation statutes. The second is the individual defendants' motion to dismiss based on improper service of process and a motion for

1. The ladder was the type attached to fire truck and was operated by mechanical control from the truck.

2. Olicker Depo. Tr. at 22. (Attached as Def.'s Resp. to Pl.'s Mot. to Dismiss at Ex. 3).

summary judgment based on the Delaware Municipal and County Tort Claims Act.

### Parties' Contentions

### All Defendants' Motion

Defendants argue that under 19 *Del. C.* § 2312 a volunteer firefighter is a state employee. They argue that because Larson, Brown and Olicker are all employees of the same employer, the State of Delaware, the exclusivity provisions take effect and summary judgment is appropriate. They further allege that Mill Creek must also be considered, the State, i.e., the employer, by necessary implication. By virtue of the fact that all parties are now entities or employees of the State, defendants assert, they can invoke the exclusivity provisions found in the Workers' Compensation Act.[3]

In response, Larson argues that there is nothing in the statute that would apply outside of actual workers' compensation benefits to be paid and that defendants have already argued that they are county or municipal employees in their other motion. He further contends that the evidence has shown that Mill Creek is not a state agency. Namely, because the State did not have oversight over the day-to-day operations of Mill Creek, that there was no State investigation after the injury, that each firehouse has its own operating procedures and disciplinary procedures, and that the State does not test volunteer firefighters for competency nor does it inspect volunteer fire company books, Mill Creek is not a State agency. Larson asserts that a judgment would not be paid by the same entity that is paying the workers' compensation.

In the alternative, the three defendants argue that under the Borrowed Servant Doctrine, Larson became an employee of Mill Creek because J.D. Howell, Mill Creek's Chief, had the authority to dictate Larson's actions. If so, this means that all defendants can invoke the exclusivity provisions of § 2363 in the same way they attempt to when they classify themselves as state employees.

Larson contends that a determination that an employee is a borrowed servant is a factual issue that cannot be decided at a motion for summary judgment.

### Brown and Olicker's Motion

Brown and Olicker argue that the service of process on them was improper. They state that they were not served in their place of abode, as required by Superior Court Civil Rule 4. Instead, they were served by the plaintiff leaving copies of the complaint at the Mill Creek Fire Station.

In response, Larson contends that they were employees and volunteers of the fire station and received notice because they answered the complaint and participated in discovery. They ask that if service is deemed improper that they be given more time to properly serve the two defendants.

Second, defendants argue that the Municipal Tort Claims Act bars recovery against them. They state that 10 *Del. C.* § 4010 qualifies Olicker and Brown as municipal employees and that § 4011 makes them immune from suit. They state that there is nothing in the record that indicates they acted with wanton negligence or maliciously. Larson replies that Brown's and Olicker's actions could be considered wanton or grossly negligent and that there is a genuine factual issue on that.

### Standard of Review

Summary judgment may only be granted where there are no genuine issues of material fact and the moving party is enti-

---

3.  19 *Del. C.* § 2363(a).

tled to judgment as a matter of law.[4] The party who seeks summary judgment bears the burden of showing a lack of genuine issue and entitlement to judgment as a matter of law,[5] and the Court must view the record in the light most favorable to the non-moving party.[6]

## Discussion

### Olicker and Brown are State Employees

■ Whether to define a volunteer firefighter as a state employee or not for purposes of workers' compensation's exclusivity immunity is a matter of first impression. The Court acknowledges the inconsistent classification of volunteer firefighters by comparing Title 19 and Title 10. Such discrepancy can be reconciled by careful scrutiny of the text of the statute at issue. It reads, *"For the purposes of this chapter,* volunteer firefighters shall be treated as State employees so long as the State elects to be covered by the application of this chapter."[7] Chapter 23 of Title 19 is the Workers' Compensation Act ("Act").

It is important that § 2312 contains that introductory phrase. It does not state, "For purposes of determining compensation to be paid." That phrase is how Larson would interpret it so that the only relevance of § 2312 is to link volunteer firefighters to a system of determining how much a "volunteer" is to be paid when injured. "Chapter" in § 2312 includes all

of Chapter 23 of Title 19. Included in that Chapter 23 are several key provisions. In it is § 2304, providing:

> Every employer and employee, adult and minor, except as expressly excluded in this chapter, shall be bound by this chapter respectively to pay and to accept compensation for personal injury or death by accident arising out of and in the course of employment, regardless of the question of negligence and to the exclusion of all other rights and remedies.[8]

This section means Larson's exclusive right to seek workers' compensation is from his employer. Though from a different volunteer fire company, § 2304 would mean if Olicker or Brown were injured fighting a fire, their exclusive remedy would be compensation from their employer. The issue then becomes, to what extent are volunteer firefighters treated as State employees and can it be said that their employer is in fact the State of Delaware?

In order to come to this decision the Court must consider the role of the State in a firefighter's workers' compensation claim. "Under Delaware law, a volunteer fireman injured during the performance of his volunteer duties is insured for workmen's compensation by the State of Delaware."[9] The record shows that the State has insured Larson in this case as well. He admits in his response to defendants' motion that the State paid him workers' compensation benefits and that the State

---

4. *Windom v. Ungerer,* 903 A.2d 276, 280 (Del. 2006).

5. *Moore v. Sizemore,* 405 A.2d 679, 680 (Del. 1979).

6. *Brzoska v. Olson,* 668 A.2d 1355, 1364 (Del. 1995).

7. 19 *Del. C.* § 2312(a) (emphasis added). The State has elected to be covered by this chap-

ter. *See DiBiaso v. State,* 1990 WL 124044, at *3, n. 1 (Del.Super.). Also, paid employees of volunteer fire companies, like Olicker, are still considered volunteers for Workers' Compensation purposes. *See* 19 *Del. C.* § 2312(d).

8. 19 *Del. C.* § 2304.

9. *DiBiaso,* 1990 WL 124044, at *1.

has asserted a lien against Larson's recovery, if any, in this case.[10] The State is Larson's insurer. Given that Larson was insured by the State, it necessarily follows that the State functioned as Brown and Olicker's workers' compensation insurer as well.

The synopsis to the bill that first added the "state employee" language of § 2312 indicates that the General Assembly changed the statute to "bring volunteer firemen within the self-insurance coverage of the State for workers' compensation purposes."[11] The Act defines the employer's insurer as an employer "as far as practicable."[12] Under the broad definition of employer, that would include the State.

That conclusion is critical because the Act is the exclusive remedy for injuries that occur from compensable accidents and employers and their employees are immune from suits at common law.[13] The Supreme Court has recently observed, "Injured employees cannot generally bring third party claims against co-employees because co-employees are generally considered to be 'in the same employ' under § 2363(a), and thus, fall within the definition of 'employer' under [19 *Del. C.* § 2304]."[14]

The Court explained the rationale behind the co-employee immunity in *Groves v. Marvel*:[15]

The purpose of § 2363(a), and like enactments, is to exclude co-employees from the category of 'third persons' who may be sued by an injured employee, thus to bar common law negligence suits against co-employees by fellow employees or by subrogated employers in connection with compensable injuries. It appears that the employer's immunity from suit has been legislatively extended to co-employees in a number of states on the theory that, as part of the *quid pro quo* in the compromise of rights which forms the basis of workmen's compensation, employees are entitled to freedom from negligence suits for compensable injuries. The rationale for such legislation seems to be that by becoming employed in industry, the worker multiplies the probability of not only injury to himself but also liability to others; and if he is exposed to ruinous suits for damages by co-employees, the beneficent effects of workmen's compensation are too drastically reduced.[16]

The Court takes notice of the dangers of a firefighter's duties. In what may be chaotic and fast moving circumstances, firefighters must make decisions and perform a difficult job. The rationale behind co-employee immunity found in *Groves* is equally applicable to volunteer firefighters. A firefighter should be able to discharge his duties without fear of liability if he or she injures a fellow firefighter through his

---

**10.** Pl.'s Resp. to Defs.' Mot. for Summ. J. (Borrowed Servant and Workers' Compensation Statute) at 4.

**11.** H.B. 431, 132d General Assembly (Del. 1984).

**12.** 19 *Del. C.* § 2301(11).

**13.** *See* 19 *Del. C.* § 2363(a) (stating, "Where the injury for which compensation is payable under chapter was caused under circumstances creating a legal liability *in some per-*

*son other than a natural person in the same employ or the employer* to pay damages in respect thereof ... such injured employee ... may also proceed to enforce the liability of such third party for damages in accordance with this section.")(emphasis added).

**14.** *Grabowski v. Mangler,* 938 A.2d 637, 641 (Del.2007).

**15.** 213 A.2d 853 (Del.1965).

**16.** *Id.* at 855.

or her negligence. In the unfortunate event of a firefighter's injury, that injured person is made whole through workers' compensation. It is appropriate to immunize firefighters in these circumstances. The simple fact that Larson was from a different company than Brown and Olicker does not bear any consequence. All the firefighters were engaged in a single task the day Larson was injured.

The differences between fire companies should not operate to strip away a volunteer firefighter's immunity from suit. The expansive definition of employer in § 2301(11), as well as the rationale underlying the co-employee immunity described in *Groves* requires this Court to hold that volunteer firefighters, *for purposes of workers' compensation,* are State employees. Section 2363 prohibits a suit at common law among volunteer firefighters who are injured in accidents compensable by workers' compensation. The Court also notes a separate reason why volunteer firefighters are be considered employees of the State for § 2363(a) purposes. Delaware's jurisprudence on subrogated claims requires this Court to find a common employer. Section 2363(a) creates a right of subrogation to the workers' compensation insurer. "[T]he employer or its compensation insurance carrier may, within the period of time for the commencement of actions prescribed by statute, enforce the liability of such other person in the name of that person."[17] The Supreme Court held the same regarding workers' compensation, "As a matter of general insurance law, an insurer who pays a loss suffered by the insured is entitled to be subrogated *pro tanto* to any right of action which the insured may have against a third person."[18]

The insurer's status as subrogee is critical to the Court's determination because of "anti-subrogation" principles. This Court previously held, "No right of subrogation exists, however, against the insured, co-insured or where the wrongdoer is insured under the same policy."[19] Because all volunteer firefighters share the same workers' compensation insurer, the State, it follows that the State would not have a right to seek damages against any other volunteer firefighter under the same policy. The State is not the plaintiff in this action, but that principle must be noted.

Section 2363(e) provides that "[a]ny recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses or recovery, shall first reimburse the employer or its workers' compensation insurance carrier for any amounts paid or payable under the Workers' Compensation Act to date of recovery[.]" This creates a lien held by the insurance carrier that becomes effective when the injured employee receives a judgment from a third party. The practical effect in this case would be that if Larson received a judgment from Olicker or Brown, then the State would collect whatever it paid out before Larson received anything. This would violate the anti-subrogation rules cited above.

This Court has observed the underlying rationale that prevents subrogation among co-insured parties in *Hartford Insurance Co. v. Community Systems, Inc.*[20] It concerned a suit by a landlord and its subrogee against an individual tenant and the tenant association for damages resulting

---

17.  19 *Del. C.* § 2363(a).

18.  *Frank C. Sparks Co. v. Huber Baking Co.,* 96 A.2d 456, 462 (Del.1953).

19.  *Lexington Ins. Co. v. Raboin,* 712 A.2d 1011, 1015 (Del.Super.1998).

20.  2009 WL 1027103 (Del.Super.)

from a fire. Although that case is factually different, the rationale behind such anti-subrogation principles was clearly defined:

> The company affording such [insurance] coverage should be allowed to shift a fire loss to an occupying tenant even if the latter negligent caused it.... For to conclude otherwise is to shift the insurable risk assumed by the insurance company from it to the tenant—a party occupying a substantially different position from that of a fire-causing third party not in privity with the insured landlord.[21]

The rationale explained in *Hartford Insurance* holds here as well. If the Court were to allow a suit by one volunteer firefighter against another it would be, in effect, allowing the insurer, the State, to recoup its loss from a party that it insured. If Olicker or Brown were required to pay a judgment, the State would recover what it first paid out in workers' compensation coverage to an injured party from another person that it insures. It would not be permitted to sue Brown or Olicker directly and is not able to do indirectly what it cannot do on its own. The State's status as subrogee and lienholder requires that the all the volunteer firefighters be considered State employees for purposes of exclusivity under § 2363(a).

The Court's holding that Larson, as a State employee, cannot, under Title 19, Chapter 23 sue Brown and Olicker, as co-State employees does not create a conflict with the County and Municipal Tort Claims Act.[22] That Tort Claims Act includes volunteer firefighters within its definition of employee.[23] It also includes "all registered" volunteer fire companies as "governmental entities." [24]

Volunteer firemen can be liable for acts not performed within the scope of their employment or acts within the scope of their employment with wanton negligence or willful and malicious intent.[25] It is precisely wanton negligence which is the basis for Larson's claim against Brown and Olicker.

The Court does not see an irreconcilable conflict between its holding that, under the Workers' Compensation Act, Larson cannot sue Brown and Olicker and the above provisions in the Tort Claims Act. These two statutes are reconcilable. That reconciliation is that under the Tort Claims Act, Brown and Olicker could be sued by a third-party who is not a firefighter.[26]

The motion for summary judgment with respect to Brown and Olicker is **GRANTED.**[27]

---

21. *Id.* at *2 (citing *Sutton v. Jondahl*, 532 P.2d 478, 482 (Okl.App.1975)).

22. 10 *Del. C.* §§ 4010–4013.

23. 10 *Del. C.* § 4010(a).

24. 10 *Del. C.* § 4010(b).

25. 10 *Del. C.* § 4010(c).

26. The Court does not in this opinion address the issue of Larson's ability to sue a State employee who worked for a totally separate agency, such as park ranger, if both were acting within the scope of their employment when Larson were injured. The issues raised in this case and this opinion may merit some legislative attention.

27. Plaintiff notes in his response that Mill Creek Fire Company had retained its own liability insurance carrier and that any judgments paid from any defendants would be covered by that insurer. To argue that the State would not have to pay the general liability misses the mark. The Court reached its decision because the State operated as both Olicker's and Brown's insurer and the party that would recovery from a judgment against them, albeit indirectly. The fact that Mill Creek retained a general liability insurer is irrelevant.

The Court's holding that Larson cannot maintain his suit against Olicker and Brown does not reach Mill Creek. Its only argument that it does is that by implication it becomes the State and cannot be sued. It cites no authority for this statement nor has the Court's own research revealed any to support its claim. The Court's analysis of the consequences of 19 *Del. C.* § 2312, since it uses volunteer firefighters and not volunteer fire companies, is that it applies to Brown and Olicker. This leaves the provision in 10 *Del. C.* § 4012(1) that it may be liable to Larson for its maintenance or use of the fire truck or other equipment.[28] The Court sees no conflict between leaving Mill Creek's liability an open question under these statutes but ending any potential liability by Brown and/or Olicker.

Accordingly, Mill Creek's motion for summary judgment is **DENIED.**

### Olicker and Brown's Motion to Dismiss on Service of Process and Motion for Summary Judgment Based on the County and Municipal Tort Claims Act

The Court declines to address Olicker and Brown's motion to dismiss for insufficient service of process and motion for summary judgment under the Municipal and County Tort Claims Act. This motion is **MOOT** because the individual defendants are immune from suit by Larson under § 2363(a).[29]

---

**28.** A governmental entity shall be exposed to liability for its negligent acts or omissions causing property damage, bodily injury or death in the following instances:
    (1) In its ownership, maintenance or use of any motor vehicle, special mobile equipment, trailer, aircraft or other machinery or equipment, whether mobile or stationary.

**29.** The Court notes, however, these defendants were not properly served. It sees no reason to allow for proper service and redo these motions.

### Mill Creek's Motion that Larson was a Borrowed Servant

■ Although Olicker and Brown are no longer defendants, Mill Creek remains. It presents a separate alternative argument to the § 2312 issue discussed above. It argues that the Borrowed Servant Doctrine applies to Larson and as a method of its operation, invokes the exclusivity principles contained within the Workers' Compensation Act because Larson, Olicker and Brown were all employed by Mill Creek on the date of Larson's injury.[30] The import would be that if Olicker, Brown, and Larson were employees of Mill Creek, the exclusivity provisions of the Workers' Compensation Act would trump 10 *Del. C.* § 4012 discussed above.

■ The Supreme Court clearly defined the Borrowed Servant Doctrine in *Richardson v. John T. Hardy & Sons, Inc.*[31] The general rule is that an employee, with his consent, may be loaned by his general employer to another to perform specific services, and that, in the course of and for the purpose of performing such services, he may become the employee of the specific employee rather than the employee of the general manager. Accordingly, a loaned employee may become the specific employer's employee while at the same time remaining, generally speaking, the employee of him who loans his services.[32]

---

**30.** *See* 19 *Del. C.* § 2363 (an employee is not permitted to sue other employees or his employee when injured in the course of his employment and receiving workers' compensation).

**31.** 182 A.2d 901 (Del.1962).

**32.** *Id.* at 903.

The Court has previously used the Borrowed Servant Doctrine to determine exclusivity of workers' compensations claims.[33] However, as *Richardson* explains, "Whether or not a loaned employee becomes the employee of the one whose immediate purpose he serves is always a question of fact ..."[34] It is clear that Chief Howell of Mill Creek was commanding the scene, but there are other factors which arguably suggest Larson was not a borrowed employee. However, the Court cannot make the factual determination needed to resolve the issue and invoke the Workers' Compensation's exclusivity provision at this time. That question must be addressed by a finder of fact at trial. The motion is **DENIED.**

### Conclusion

For the foregoing reasons, Aaron Olicker's and Les Brown's motion for summary judgment based upon the Workers' Compensation Act is **GRANTED.** Their motion to dismiss on insufficient service and motion for summary judgment based on the County and Municipal Tort Claims Act are **MOOT.**

Mill Creek Fire Company's motions for summary judgment based upon the Workers' Compensation Act and upon the Borrowed Servant Doctrine are **DENIED.**

**IT IS SO ORDERED.**

**33.** *Porter v. Pathfinder Servs. Inc,* 683 A.2d 40 (Del.1996).

**34.** *Richardson,* 182 A.2d at 903–04.